# 2004 DTA 134

## TRIBUNAL DE CIRCUITO DE APELACIONES
## REGIÓN JUDICIAL DE SAN JUAN, PANEL IV

AUTORIDAD DE CARRETERAS Y TRANSPORTACIÓN DE PUERTO RICO
Apelante

v.

SAN JUAN GAS COMPANY, INC.
Apelada

Núm. KLAN-2003-00878

San Juan, Puerto Rico, a 17 de agosto de 2004

Panel integrado por su Presidente, el Juez Gierbolini,
y los Jueces Cordero y Rodríguez Muñiz

Rodríguez Muñiz, Juez Ponente

**TEXTO COMPLETO DE LA SENTENCIA**

El 29 de julio de 2003, la Autoridad de Carreteras y Transportación de Puerto Rico (en adelante, la ("*Autoridad*") presentó un recurso de apelación en el que nos solicitó la revisión de una Sentencia emitida por el Tribunal de Primera Instancia, Sala Superior de San Juan (en adelante, el TPI), el 27 de marzo de 2003, enmendada el 11 de abril de 2003, notificada y archivada en autos el 14 de abril de 2003. Mediante dicha sentencia, el TPI declaró "*no ha lugar*" una demanda en cobro de dinero y condenó a la Autoridad a pagar las costas y gastos del proceso.

A continuación expondremos brevemente el trasfondo fáctico y procesal del caso.

## I

El 14 de febrero de 1989, la Autoridad presentó demanda en cobro de dinero contra la empresa San Juan Gas. Alegó, en síntesis, que en mayo de 1984, comenzó los trabajos relacionados con el proyecto de *"Mejoras Geométricas y Sistemas de Semáforos de la Avenida Jesús T. Piñero"*, con número AC-001709, localizado en San Juan, Puerto Rico. Que antes de comenzar los trabajos convocó a una reunión donde estuvieron presentes las entidades que tenían utilidades en el área de construcción. Entre ellas, San Juan Gas, quien informó que por el área donde se ampliaría la avenida discurría una tubería de gas de su propiedad. Añadió que San Juan Gas conocía que tendría que remover o, en su defecto, proteger la tubería, a su costo. Que San Juan Gas le dio instrucciones a la Autoridad para que protegieran la tubería, supervisó los trabajos y estuvo satisfecha con la labor realizada. Que el costo total de la obra ascendió a doscientos diez mil cincuenta y cuatro dólares con veintitrés centavos ($210,054.23). Indicó que le había requerido en innumerables ocasiones a San Juan Gas el pago de dicha cantidad; sin embargo, ésta se había negado a pagar.

Luego de varios incidentes procesales, el 3 de octubre de 1991, San Juan Gas presentó: (1) Moción Solicitando Sentencia Sumaria; (2) Memorando de Derecho de la Demandada en Apoyo de Sentencia Sumaria.

El 8 de octubre de 1991, la Autoridad presentó Moción Solicitando Sentencia Sumaria.

El 14 de febrero de 1992, notificada y archivada en autos el 26 de febrero de ese mismo año, el TPI emitió Sentencia en la que determinó que San Juan Gas estaba obligada a pagarle a la Autoridad los costos incurridos en la protección de la tubería de gas. ■ De otra parte, quedó pendiente por determinar la cantidad de dinero invertida por la Autoridad en dichos trabajos y, así, adjudicar la suma que le correspondía pagar a San Juan Gas.

El 10 de marzo de 1992, San Juan Gas presentó Reconsideración.

Así las cosas, el 9 de abril de 1992, la Autoridad presentó Oposición A Moción De Reconsideración.

Luego de varios trámites procesales interlocutorios, el 8 de junio de 2000, San Juan Gas presentó Moción de Desestimación al amparo de la Regla 39.2 (b) de las de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 39.2 (b). El 25 de septiembre de 2000, el TPI celebró vista de seguimiento en el caso de epígrafe. De la Minuta de ese día, en lo pertinente, surge que el TPI declaró *"no ha lugar"* la solicitud de desestimación por inactividad presentada por San Juan Gas, bajo el fundamento de que la sentencia emitida en el caso era final. ■

El 18 de octubre de 2000, San Juan Gas presentó: Solicitud de Reconsideración por Entender que no es Sentencia Final la Resolución Interlocutoria Del 14 de febrero de 1992. ■

El 6 de diciembre de 2000, notificada y archivada en autos el 10 de enero de 2001, el TPI emitió Resolución en la que declaró *"ha lugar"* la moción de reconsideración en cuanto a que la Sentencia del 14 de febrero de 1992, no era final, ■ pero, declaró *"no ha lugar"* la reconsideración en cuanto a la denegatoria de la solicitud de desestimación por inactividad.

Luego de otros trámites procesales interlocutorios, el 18 de noviembre de 2002, comenzó el juicio en su fondo relacionado a la controversia ante nos. La Autoridad, en lo pertinente, presentó copias de cuatro (4) documentos titulados: `RESUMEN DEL TRABAJO POR ADMINISTRACIÓN DELEGADA, (FORCE ACCOUNT), NÚM. 5´. Dichos documentos alegadamente resumían los costos incurridos por la Autoridad en los trabajos de protección de la tubería de gas, durante los meses de junio, julio, agosto y septiembre. Además, la Autoridad presentó copia de un documento titulado: *"Orden de Cambio Número 8"*, con fecha de 30 de julio de 1984. La empresa San Juan Gas objetó la admisión de los documentos antes mencionados. El TPI declaró sin lugar las

objeciones y admitió la prueba presentada.

En la continuación de la vista en su fondo el 20 de enero de 2002, según surge de la Minuta, en lo pertinente, concluida la presentación de prueba por parte de la Autoridad, San Juan Gas solicitó la desestimación de la demanda al amparo de la Regla 39.2 (c) de las de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 39.2 (c). El TPI declaró *"no ha lugar"* dicha solicitud.

Mediante Sentencia de 27 de marzo de 2003, enmendada el 11 de abril de 2003, notificada y archivada en autos el 14 de abril de 2003, el TPI declaró *"no ha lugar"* la demanda en cobro de dinero por insuficiencia de prueba. El referido foro, en síntesis, concluyó que la prueba presentada por la Autoridad carecía de confiabilidad y credibilidad a los efectos de acreditar los costos incurridos en la protección de la tubería de gas. Condenó a la Autoridad a pagar las costas y gastos del proceso.

El 11 de abril de 2003, la Autoridad presentó Solicitud de Determinaciones de Hechos Adicionales.

Posteriormente, el 25 de junio de 2003, el TPI emitió Resolución en la que declaró *"no ha lugar"* la solicitud de determinaciones de hechos adicionales presentada por la Autoridad.

## II

La Autoridad comparece ante este Tribunal señalando que el TPI cometió los siguientes errores:

*"A. Erró el Honorable Tribunal de Primera Instancia al declarar no ha lugar la demanda en todos sus extremos, a pesar de existir una sentencia parcial del 14 de febrero de 1992 en la cual dicho Foro determinó que San Juan Gas tenía la obligación de pagar por los gastos incurridos en la protección de su tubería de gas.*

*B. Erró el Honorable Tribunal de Primera Instancia al determinar que los exhibits admitidos en evidencia pertenecientes al expediente oficial de la oficina de Auditoria de (sic) Interna de la Autoridad de Carreteras y Transportación que establecen la cantidad de dinero que San Juan Gas debe reembolsar carecían de confiabilidad y credibilidad, sin que ésta presentara en el juicio evidencia alguna para controvertir la presunción de corrección que los cobija.*

*C. Erró el Honorable Tribunal de Primera Instancia al formular determinaciones de hechos que no están sustentadas por la prueba o contrarias a la prueba presentada.*

*D. Erró el Honorable Tribunal de Primera Instancia al determinar que la Autoridad de Carreteras y Transportación excluyó evidencia voluntariamente.*

*E. Erró el Honorable Tribunal de Primera Instancia al determinar que los exhibits 16, 17, 18 y 19 no presentan una relación específica de los materiales utilizados en el proyecto de construcción.*

*F. Erró el Honorable Tribunal de Primera Instancia al autorizar costas sobre documentos preparados que no fueron anunciados ni entregados a la parte contraria, ni admitidos por el Tribunal como evidencia.*

*G. Erró el Honorable Tribunal de Primera Instancia al no determinar que San Juan Gas incurrió en temeridad al negarse a reembolsar a la Autoridad de Carreteras y Transportación el costo incurrido en la protección de su tubería de gas."*

## III

La Regla 43.1 de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 43.1, define el término sentencia como *"cualquier determinación del Tribunal de Primera Instancia que resuelva finalmente la cuestión litigiosa de la*

*cual pueda apelarse".* En *Rodríguez v. Tribunal Municipal y Ramos,* 74 D.P.R. 656, 664 (1953), el Tribunal Supremo explicó cuál es la diferencia entre una resolución y una sentencia. Indicó que *"existe una diferencia conceptual categórica entre una resolución y una sentencia. Ninguna de las dos constituye un término genérico dentro del cual pueda entenderse comprendida la otra específicamente. Una resolución pone fin a un incidente dentro del proceso judicial, mientras una. sentencia pone fin a la controversia entre las partes mediante una adjudicación final".*

Como señala Hiram A. Sánchez Martínez, *Derecho Procesal Apelativo,* Lexis-Nexis of Puerto Rico, Inc., San Juan, 2001, sec. 1602, a las páginas 355-356, *"[c]lasificar un dictamen como resolución o como sentencia resulta ser, para muchos jueces, abogados y estudiantes de Derecho, una tarea un poco difícil",* y añade:

*"[E]s indispensable que distingamos dos conceptos que, a primera vista, pudieran parecer similares, pero que son absolutamente diferentes: "reclamaciones múltiples" y "controversias múltiples". Una reclamación es una causa de acción, es decir, la razón de pedir un remedio judicial. Una controversia es, en cambio, un elemento o cuestión a dilucidar dentro de una misma reclamación. **De este modo, la acción de pedir el pago de una deuda es una reclamación de cobro de dinero, pero la determinación de si el demandado está obligado a pagar y, si lo está, a cuánto asciende la deuda, son dos controversias distintas de una misma reclamación.** [Citas omitidas.] Lo mismo ocurre con una acción de daños por culpa o negligencia proveniente de un sólo acto: siendo una sola reclamación, contiene varias controversias: si el demandado fue negligente, si el demandante sufrió daños, si hay relación causal entre la negligencia del demandado y el daño sufrido por el demandante y a cuánto asciende ese daño. [Citas omitidas.] **No son, pues, varias reclamaciones de un mismo pleito, sino varias controversias de una misma reclamación."** (*Énfasis nuestro.)

Por lo tanto, una resolución interlocutoria no adjudica en forma total una reclamación de un pleito; este dictamen no es capaz de poner fin a tal asunto. El TPI puede alterarla en cualquier momento, antes de dictar sentencia final adjudicando la totalidad del asunto ante sí, si queda firmemente convencido de que se equivocó. Tal dictamen interlocutorio no constituye cosa juzgada. *Camaleglo v. Dorado Wings, Inc.,* 118 D.P.R. 20, 27 (1986).

**IV**

Las Reglas de Evidencia establecen que toda evidencia pertinente es admisible, excepto cuando de otro modo se disponga por ley o por las reglas de evidencia. ■ La evidencia pertinente es aquélla tendente a hacer la existencia de un hecho más probable o menos probable de lo que sería sin tal evidencia; dicho hecho debe a su vez, referirse a una cuestión en controversia o a la credibilidad de algún testigo o declarante. No obstante, existe en nuestro derecho probatorio la llamada prueba de referencia que indica que no será admisible prueba de referencia, salvo que por ley se disponga otra cosa. ■ La prueba de referencia no es otra cosa que una declaración aparte de la que hace la persona que hace la declaración al testificar en el juicio o vista, y que se ofrece en evidencia para probar la verdad de lo aseverado. ■

Como excepción a la regla de prueba de referencia, son admisibles, en lo pertinente, como evidencia los récords de informes oficiales y los récords de negocio o actividad.

La Regla 65(H) de Evidencia, 32 L.P.R.A. Ap. IV, R. 65(H), provee para la admisión de récords e informes oficiales de un funcionario público expedidos con relación a sus deberes, por lo que dispone lo siguiente:

*"Evidencia de un escrito hecho como récord o informe de un acto, condición o evento, cuando se ofrece para probar el acto, condición o evento, si el escrito fue hecho en o cerca del momento del acto, condición o evento, por y dentro del ámbito del deber de un empleado público, siempre que las fuentes de información y el método y momento de preparación fueran tales que indican su confiabilidad."*

La razón para ello es que, de ordinario, un expediente o informe oficial es preparado por personas que no tienen motivo alguno para suprimir o alterar la verdad o para fabricar evidencia y son, además, preparados en el desempeño de un deber público. *Pueblo v. Millán Meléndez*, 110 D.P.R. 171, 175-176 (1980).

La admisibilidad del récord o informe oficial está condicionada a que se satisfagan los siguientes requisitos: (1) el escrito fue hecho por y dentro del ámbito de los deberes de un funcionario público; (2) en o cerca del momento del suceso, acto o condición a que se refiere el mismo; (3) la fuente de información, así como el momento y método de su preparación, son tales que indican confiabilidad. *Pueblo v. Mattei Torres*, 121 D.P.R. 600, 616 (1988). Una vez estos requisitos son satisfechos, los récords constituyen evidencia *prima facie* de los hechos en ellos consignados. Dicha regla lo que exige es que la fuente de información, así como el momento y el método, sean tales que denoten confiabilidad.

Por otro lado, los récords de negocios son admisibles bajo la Regla 65 (F) de Evidencia, 32 L.P.R.A. Ap. IV, R. 65 (F), la misma dispone lo siguiente:

*"Un escrito hecho como récord de un acto, condición o evento si el escrito fue hecho durante el curso regular de un negocio, en o próximo al momento del acto, condición o evento, y el custodio de dicho escrito u otro testigo declara sobre su identidad y el método de su preparación, siempre que las fuentes de información, método y momento de su preparación fueran tales que indiquen su confiabilidad. El término "negocio" incluye además de negocio propiamente, una actividad gubernamental, profesión, ocupación, vocación u operación de instituciones, ya sea con o sin fines pecuniarios."* (Énfasis nuestro.)

Conforme a lo anterior, la Regla 65 (F), *supra*, contempla cuatro requisitos que han de ser cumplidos para que el Tribunal permita que el récord de negocio sea admitido como evidencia: (1) que el escrito o récord haya sido hecho durante el curso regular del negocio; (2) que haya sido hecho en o próximo al momento del acto, condición o suceso al que hace referencia el récord; (3) que el custodio del escrito o récord, o algún otro testigo, declare sobre su identidad y método de preparación; y (4) que las fuentes de información, método y momento de la preparación del récord, sean tales que indiquen su confiabilidad. *Hato Rey Stationery, Inc. v. E.L.A.*, 119 D.P.R. 129, 138 (1987).

Por otro lado, cabe destacar la importancia teórica del testimonio del custodio, o "*algún otro testigo*", para determinar la confiabilidad del récord, para satisfacer el requisito usual de autenticación como condición previa a la admisibilidad de la evidencia. Del lenguaje de la Regla surge que, como norma general, es necesario que un testigo declare sobre los tres requisitos adicionales que le son exigidos como condición a la admisibilidad del récord de negocio. *Id.*, a las páginas 139-140. De ordinario, el testigo será el funcionario o empleado encargado de la sección de archivo o récord del negocio o actividad en cuestión. Pero, cualquier persona con conocimiento sobre la preparación del asiento o récord puede declarar. Sin embargo, la jurisprudencia, con algunas excepciones, está inclinada a requerir la presencia del custodio en el tribunal. Lógicamente, la presencia del custodio, tiende a garantizar una mayor confiabilidad en el récord que es ofrecido en evidencia. Con su declaración, el testigo debe demostrar la confiabilidad del récord, satisfacer el requisito usual de autenticación como condición previa a la admisibilidad de la prueba y probar la existencia de una práctica de negocio continúa y regular. *Id.*, a la página 139.

Específicamente, entre los factores que gravitan sobre el análisis de la confiabilidad del récord están: (1) si la información recopilada es importante para el negocio en cuestión fuera del contexto litigioso en el cual es ofrecida; (2) si el récord contiene información fáctica relativamente simple y no evaluaciones o conclusiones; (3) si la persona que transmite la información y la persona que práctica el asiento (que pueden ser distintas) son independientes de las partes en el pleito; (4) si la información está corroborada por evidencia independiente; (5) si el registro lo prepara una persona con experiencia y si la exactitud del mismo fue verificada. *Id.*, a la página 142.

Ahora bien, la Regla 65 (F), *supra*, dispone, en lo pertinente, que el término *"negocio"* incluirá la actividad gubernamental. Ernesto L. Chiesa, *Tratado de Derecho Probatorio*, **Publicaciones JTS**, Tomo II, a las páginas 816-817. Así pues, el texto de dicha Regla permite invocarla cuando se trate de un récord de oficina de gobierno. *Id.*, a la página 817.

Por lo tanto, los informes oficiales serán admitidos como un récord de negocio, si satisfacen los requisitos de la Regla 65 (F) de Evidencia, *supra*.

## V

De ordinario, los tribunales apelativos no intervendrán con la apreciación de hechos que hizo el Tribunal de Primera Instancia a base de la prueba ofrecida en el juicio, plenamente justificada en el récord, en ausencia de error manifiesto, pasión, prejuicio o parcialidad, *Municipio de Ponce v. Autoridad de Carreteras y Transportación et al*, 153 D.P.R. __, **2001 J.T.S. 3**, a la página 658, Opinión de 29 de diciembre de 2001; *Rolón García v. Charlie Car Rental, Inc.*, 148 D.P.R. 420, 433 (1999). A tenor con ello, los tribunales apelativos conceden gran deferencia a las determinaciones de hechos del tribunal sentenciador y no las alteran, en ausencia de error, prejuicio o parcialidad. Pero en la evaluación de la prueba documental, los tribunales apelativos están en igual condición que el tribunal de instancia, *Moreda Toledo v. Rosselli*, 150 D.P.R. 473, 479 (2000). Sin embargo, aunque el arbitrio del juzgador de hechos es respetable, no es absoluto; por lo que una apreciación errónea de la prueba no tiene inmunidad frente a la función revisora del tribunal apelativo. Aunque haya evidencia que sostenga las conclusiones de hechos del Tribunal de Primera Instancia, si de un análisis de la totalidad de la evidencia el tribunal apelativo queda convencido de que Instancia cometió un error, las considerará claramente erróneas, *Méndez Rodríguez v. Morales Molina*, 142 D.P.R. 26, 36 (1996).

## VI

La Regla 10 de Evidencia, 32 L.P.R.A. Ap. IV, R. 10, establece que a los fines de determinar cuáles hechos han quedado establecidos o demostrados, el tribunal o juzgador de hechos deberá evaluar la evidencia presentada con sujeción a varios principios. Entre ellos, el inciso (G) dispone que la evidencia ofrecida deberá mirarse con sospecha cuando una parte, pudiendo haber ofrecido una prueba más firme y satisfactoria, ofrece una más débil y menos satisfactoria. ■

Por otro lado, entre las presunciones controvertibles de la Regla 16 de Evidencia, 32 L.P.R.A. Ap. IV, R. 16, en lo pertinente, los incisos (5) y (6) establecen lo siguiente:

*"Las presunciones son aquéllas establecidas por ley o por decisiones judiciales. Entre las presunciones controvertibles se reconocen las siguientes:*

*1. ...*

*2. ...*

*3. ...*

*4. ...*

*5. Que toda evidencia voluntariamente suprimida resultará adversa si se ofreciere.*

*6. Que toda evidencia superior habrá de ser adversa a la presentación de otra inferior.*

*7. ...".*

## VII

La Regla 44.1 de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 44.1, establece respecto a la concesión de costas lo siguiente:

*"(a) Su concesión. – Las costas le serán concedidas a la parte a cuyo favor se resuelva el pleito o se dicte sentencia en apelación, excepto en aquellos casos en que se dispusiera lo contrario por ley o por estas reglas. Las costas que podrá conceder el tribunal son los gastos incurridos necesariamente en la tramitación de un pleito o procedimiento que la ley ordena o que el tribunal, en su discreción, estima que un litigante debe reembolsar a otro.*

*(b) Cómo se concederán. - La parte que reclame el pago de costas presentará al tribunal y notificará a la parte contraria, dentro del término de diez (10) días contados a partir del archivo en autos de copia de la notificación de la sentencia, una relación o memorándum de todas las partidas de gastos y desembolsos necesarios incurridos durante la tramitación del pleito o procedimiento. El memorándum de costas se presentará bajo juramento y consignará que según el leal saber y entender del reclamante o de su abogado, las partidas de gastos incluidas son correctas y que todos los desembolsos eran necesarios para la tramitación del pleito o procedimiento. Si no hubiere impugnación, el tribunal aprobará el memorándum de costas, y podrá eliminar cualquier partida que considere improcedente, luego de conceder al solicitante la oportunidad de justificar la misma. Cualquier parte que no esté conforme con las costas reclamadas podrá impugnar las mismas en todo o en parte, dentro del término de diez (10) días contados a partir de aquél en que se le notifique el memorándum de costas. El tribunal, luego de considerar la posición de las partes, resolverá la impugnación. La resolución del Tribunal de Primera Instancia podrá ser revisada por el Tribunal de Circuito de Apelaciones mediante certiorari a ser librado a su discreción, y de ningún otro modo. La revisión de la resolución deberá tramitarse conjuntamente con cualquier otro recurso que haya sido establecido contra la sentencia, y en caso de que no se establezca recurso alguno, podrá siempre recurrirse de la resolución sobre costas.*

*(c) ...*

*(d) ...".* (Énfasis nuestro.)

Como puede observarse, la regla aludida tiene una función reparadora, cuyo propósito es el de resarcir a la parte victoriosa los gastos necesarios y razonables incurridos durante el litigio. *Auto Servi, Inc. v. E.L.A.,* 142 D.P.R. 321, 326-327 (1997); *J.T.P. Dev. Corp. v. Majestic Realty Corp.,* 130 D.P.R. 456, 460 (1992); *Rodríguez Cancel v. A.E.E.,* 116 D.P.R. 443, 461 (1985); *Garriga, Jr. v. Tribunal Superior,* 88 D.P.R. 245, 2532-253 (1963). También, la Regla 44.1 (a), *supra,* tiene un fin de índole disuasivo, esto es, desalentar los pleitos temerarios y superfluos que se llevan a cabo sólo con el propósito de retrasar la justicia. *Garriga, Jr. v. Tribunal Superior, supra,* a las páginas 252-253.

El Tribunal Supremo de Puerto Rico ha expresado que las costas se justifican debido a que el derecho de la parte vencedora *"no debe quedar menguado por los gastos en que tuvo que incurrir sin su culpa y por culpa del adversario." Id.*

La imposición de costas a la parte perdidosa es mandatoria. *Blás v. Hosp. Guadalupe,* 146 D.P.R. 267, 337 (1998); *J.T.P. Dev. Corp. v. Majestic Realty Corp., supra,* a las páginas 460-461; *Colondres Vélez v. Bayrón Vélez,* 114 D.P.R. 833, 838-839 (1983). Sin embargo, el tribunal sentenciador deberá ejercer su discreción al conceder las costas con moderación, examinando cuidadosamente el memorando de costas, más aún cuando las mismas sean objeto de impugnación. *Pereira v. I.B.E.C.,* 95 D.P.R. 28, 79 (1967). Por lo que el tribunal, conforme a la Regla 44.1(a), *supra,* determinará quién fue el litigante vencedor y cuáles gastos fueron necesarios y razonables. *J.T.P. Dev. Corp. v. Majestic Realty Corp., supra,* a las páginas 460-461.

En el caso particular de la concesión de costas por los gastos de perito, la misma no es automática, sino que es una decisión discrecional del tribunal sentenciador. El tribunal debe evaluar la naturaleza y utilidad del testimonio

pericial con el fin de determinar si el mismo era necesario para que la parte prevaleciera en el pleito, teniendo la parte que los reclama el deber de demostrar que el testimonio pericial era necesario para que prevaleciera su teoría. *Arrieta v. Chinea,* 139 D.P.R. 525, 542 (1995); *J.T.P. Developmente Corp. v. Majestic Realty Corp., supra,* a la página 466; *Rodríguez Cancel v. A.E.E.,* 116 D.P.R. 443, 461 (1985).

De una lectura de la Regla 44.1, incisos (a) y (b), *supra,* se desprende que aquella parte victoriosa en un pleito tiene derecho a cobrar costas, pero para ello tendrá que presentar un memorando jurado consignando aquellos gastos incurridos que puedan ser reclamados como costas. El memorando de costas debe presentarse dentro del término jurisdiccional de diez (10) días contados a partir del archivo en autos de copia de la notificación de la sentencia. *Fenning v. Tribunal Superior,* 96 D.P.R. 615, 624 (1968). Término que es improrrogable de conformidad con la Regla 68.2 de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 68.2.

## VIII

La Regla 44.1 de las de Procedimiento Civil en su inciso (d), 32 L.P.R.A. R. 44.1 (d), regula la concesión de honorarios de abogado. Al respecto dispone: *"En caso que cualquier parte haya procedido con temeridad, el tribunal deberá imponerle en su sentencia el pago de una suma por concepto de honorarios de abogado."*

Si bien el concepto temeridad no está expresamente definido por la Regla 44.1 (d), *supra,* nuestro Tribunal Supremo ha expresado que la temeridad *"es una actitud que se proyecta sobre el procedimiento y que afecta el buen funcionamiento y la administración de la justicia. También sujeta al litigante inocente a la ordalía del proceso judicial y lo expone a gastos innecesarios y a la contratación de servicios profesionales, incluyendo abogados, con el gravamen a veces exorbitante para su peculio". Fernández v. San Juan Cement Co., Inc.,* 118 D.P.R. 713, 718 (1987).

Al referirse a los motivos que fundamentan la imposición de honorarios por temeridad, el Tribunal Supremo ha señalado que la concesión de los mismos *"no está contenida en nuestro ordenamiento como un premio a la parte que prevalece en un pleito, sino, más bien, como una sanción dirigida a una parte que con su actitud temeraria ha actuado en forma tan irrazonable o extremadamente litigiosa afirmando hechos o conduciéndose sin fundamentos o motivos". Feliciano Polanco v. Feliciano González,* 147 D.P.R. 722, 729 (1999). Cuando no está presente esa actitud temeraria, los tribunales no pueden condenar al pago de honorarios. *Id.*

Al amparo de lo anterior, el Tribunal Supremo ha resuelto que existe temeridad *"cuando por los actos de una parte se hace necesario un pleito que se pudo evitar; se prolonga un pleito innecesariamente; o se produce la necesidad de que otra parte incurra en gestiones évitables". Id.,* a la página 730. La jurisprudencia ha señalado los siguientes actos como temerarios: *"cuando el demandado contesta la demanda y niega su responsabilidad total, aunque la acepte posteriormente; cuando se defiende injustificadamente de la acción que se presenta en su contra; cuando no admite francamente su responsabilidad limitada o parcial, a pesar de creer que la única razón que tiene para oponerse a la demanda es que la cuantía es exagerada; cuando se arriesga a litigar un caso del que prima facie se desprende su negligencia; o cuando niega un hecho que le consta ser cierto." Fernández v. San Juan Cement Co., Inc., supra,* a las páginas 718-719.

## IX

En el caso que nos ocupa, la Autoridad presentó demanda en cobro de dinero en la que alegó que San Juan Gas le debía la suma de doscientos diez mil cincuenta y cuatro dólares con veintitrés centavos ($210,054.23). Del expediente surge que, en 1984, la Autoridad llevó a cabo un proyecto de mejoras en la Ave. Piñero, el cual incluia construir un nuevo carril. El contratista seleccionado por la Autoridad, Calzadilla Construction Corp., se percató de la existencia de una tubería de gas en el área en que realizaba los trabajos de construcción. La Autoridad le notificó a San Juan Gas sobre la problemática que presentaba la localización de la tubería en relación al proyecto de mejoras y que debían remover o proteger la misma asumiendo ellos los costos. Por su parte, la empresa San Juan Gas ofreció su recomendación, a solicitud de la Autoridad, la cual consistió en rellenar sobre el tubo con

arena y que no se utilizara piedras o materiales cortantes. Calzadilla Construction Corp., por orden de la Autoridad, realizó los trabajos para proteger la tubería y le facturó a ésta los costos incurridos. La Autoridad, sin embargo, no pudo probar a cuánto ascendía la suma, si alguna, que le pagó a Calzadilla Construction Corp. por los trabajos que ésta realizó, pero que eran responsabilidad de San Juan Gas.

Mediante el primer señalamiento de error, la Autoridad aduce que el tribunal apelado declaró no ha lugar la demanda, a pesar de que existía una "*Sentencia*" del 14 de febrero de 1992, en la que se determinó que San Juan Gas tenía la obligación de pagar los gastos incurridos en la protección de la tubería. En esa alegada "*Sentencia*", el TPI no adjudicó la totalidad de la reclamación, sino sólo una de las dos controversias relacionadas a la reclamación, o sea, determinó la existencia de la deuda reclamada. Al así resolver, el TPI no adjudicó la reclamación en el caso, ya que aún faltaba por determinar la cuantía de la deuda. Es evidente que el TPI incidió en error al titular "*Sentencia*" lo que en realidad era una resolución interlocutoria.

De otra parte, el TPI, mediante Resolución de 6 de diciembre de 2000, aclaró que dicho dictamen era una resolución interlocutoria y no una sentencia final.

Hasta que no se resolviera cuál era el monto de los gastos incurridos en la protección de la tubería, la "*Sentencia*" o Resolución, no podía ser final, pues no era ejecutable. Podía suceder lo que efectivamente sucedió, la Autoridad no probó el monto de los gastos por ella incurridos convirtiendo en ilusoria la "*Sentencia*" o Resolución emitida el 14 de febrero de 1992.

Como segundo señalamiento de error, la Autoridad alega que incidió el TPI al determinar que los Exhibits admitidos en evidencia, los cuales eran parte de un expediente oficial de la oficina de Auditoría de la Autoridad, carecían de confiabilidad y credibilidad, pese a que en el juicio no se presentó evidencia para controvertir la presunción de corrección que los cobija. Del expediente surge, en lo pertinente, que la Autoridad presentó cuatro (4) documentos titulados "*RESUMEN DEL TRABAJO POR ADMINISTRACIÓN DELEGADA, FORCE ACCOUNT, NÚM. 5*", como evidencia de los costos incurridos. Cada documento alegadamente resumía los costos de mano de obra, materiales y equipo que se utilizaron por mes en las labores de protección de la tubería. Las cantidades alegadamente adeudadas de acuerdo al mes de trabajo, eran las siguientes: (a) junio- ocho mil doscientos cuarenta y uno dólares con treinta y seis centavos ($8,241.36); (b) julio- cuarenta y dos mil ciento nueve mil dólares con veintidós centavos ($42,109.22); (c) agosto- cuarenta ocho mil novecientos veinte dólares con noventa y siete centavos ($48,920.97); (d) septiembre- veintiocho mil ciento treinta y dos dólares con sesenta ocho centavos ($28,132.68). Además, se presentó un documento titulado "*Orden de Cambio Número 8*", con fecha de 30 de julio de 1984, en el cual se incluían costos incurridos por la suma de ochenta y dos mil seiscientos cuarenta y seis dólares con noventa y cuatro ($82,646.94). ▮ La cantidad total facturada ascendía a doscientos diez mil cincuenta y cuatro dólares con veintitrés centavos ($210,054.23). ▮

Según indicáramos anteriormente, la Regla 65(F), *supra*, provee para la admisión en evidencia de récords de negocio. De acuerdo al texto de la Regla, la actividad gubernamental está comprendida en el término negocio; por lo tanto, podemos recurrir a dicha disposición para determinar la admisibilidad en evidencia de los récord de informes oficiales. Así pues, de la misma surge que se deben cumplir con los requisitos de la Regla 65 (F), *supra*: (1) que el escrito o récord haya sido hecho durante el curso regular del negocio; (2) que haya sido hecho en o próximo al momento del acto, condición o suceso al que hace referencia el récord; (3) que el custodio del escrito o récord, o algún otro testigo, declare sobre su identidad y método de preparación; y (4) que las fuentes de información, método y momento de la preparación del récord sean tales que indiquen su confiabilidad. Como norma general, es necesario que un testigo declare sobre los tres requisitos adicionales que son exigidos como condición para la admisibilidad del récord de negocio. El testigo será la persona encargada de la preparación o custodia de la factura; sin embargo, cualquier persona con conocimiento sobre la preparación del récord podría declarar.

De la transcripción del juicio en su fondo, podemos apreciar que la Autoridad presentó como prueba los cuatro (4) documentos titulados *"RESUMEN DEL TRABAJO POR ADMINISTRACIÓN DELEGADA, FORCE ACCOUNT, NÚM. 5"* y la Orden de Cambio Núm. 8 , marcados como Exhibits 16, 17, 18,19 y 20, mientras interrogaba a Juan E. Encarnación Medina (en adelante, *"Encarnación"*), Auditor de la Autoridad, a los fines de autenticar dichos documentos, Encarnación fue interrogado sobre la procedencia de los mismos, el método de preparación y el método de pago. Encarnación declaró que esos documentos eran parte del expediente oficial que contiene todos los documentos de la auditoría que llevó a cabo el Departamento de Auditoría de la Autoridad. Explicó que el informe de auditoría había sido preparado por otros funcionarios de la agencia. Añadió que advino en conocimiento del informe en el momento en que la representación legal de la Autoridad le contactó, ya que sólo sabía que se había preparado un informe y estaba al tanto someramente sobre el contenido del mismo. Señaló que el informe se preparó con documentos que habían surgido de otros departamentos, tales como, Finanzas y Construcción. Por lo tanto, ninguno de los documentos marcados como Exhibits había sido preparado por el departamento de auditoría. Además, no pudo señalar cuál había sido el método seguido por la Autoridad en la preparación de dichos documentos. San Juan Gas, por su parte, objetó la admisión en evidencia de dichos documentos.

Posteriormente, en el transcurso del juicio, se interrogó a Edwin I. Feliciano Albert (en adelante, *"Feliciano"*), Ingeniero Civil, quien había sido el administrador del proyecto de mejoras de la Avenida Piñero. Del testimonio de Feliciano, surge que los Exhibits admitidos en evidencia eran un resumen de los trabajos realizados para proteger la tubería propiedad de San Juan Gas y que la firma que aparecía en los documentos era la de él. Añadió que San Juan Gas no audió los documentos. Como cuestión de hecho, estos documentos no desglosaban los trabajos realizados, ni en qué fecha y en qué lugar se completaron los mismos. Añadió que esos documentos representaban un *"cuadre mensual"*, y los mismos se utilizaban para certificar los trabajos y luego pagar al contratista. En cuanto al método de preparación de los documentos, Feliciano expuso que se prepararon a base de unos diarios de trabajos, los cuales no constaban en el expediente de la agencia. De igual forma no constaban en el expediente, las certificaciones que acreditaban el pago que alegadamente la Autoridad le remitió al contratista. Declaró que los documentos se habían perdido como consecuencia de un huracán; sin embargo, no se presentó prueba sobre el particular.

Encarnación y Feliciano no eran los testigos idóneos para declarar sobre los documentos en controversia, ya que con sus declaraciones no pudieron establecer que dichos documentos eran confiables.

Tampoco existe presunción alguna de corrección que cobije los documentos en controversia.

En consecuencia de lo antes dicho, forzoso es concluir que no erró el foro recurrido al determinar que los Exhibits 16, 17, 18, 19 y 20, carecían de confiabilidad y credibilidad.

Como tercer error, la Autoridad plantea que incidió el foro apelado al formular determinaciones de hechos que no están sustentadas por la prueba o contrarias a la prueba presentada. En particular, en el escrito de apelación, la Autoridad señala que el TPI no estaba en condiciones de formular la determinación de hecho número 2. En la misma, en síntesis, el TPI expone que tomó conocimiento judicial de las calles que interceptan la Avenida Piñero. ■■■

Del expediente surge que San Juan Gas, en el Informe Sobre Conferencia Preliminar Entre Abogados Enmendado, suscrito por las partes y presentado el 11 de abril de 2002, le solicitó al TPI que tomara conocimiento Judicial sobre las calles que interceptan la Avenida Piñero. ■■■ De igual forma, surge de la transcripción que San Juan Gas solicitó en corte abierta que el tribunal tomara conocimiento judicial sobre el particular.

El inciso (A) de la Regla 11 de Evidencia, 32 L.P.R.A. Ap. IV, R. 11 (A), establece los dos criterios bajo los

cuales procede tomar conocimiento judicial. A su vez, el sub-inciso (1) dispone el criterio de conocimiento general, que consiste en todo hecho que no sea razonablemente objeto de controversia por ser de conocimiento general dentro de la jurisdicción del tribunal. *Asoc. de Periodistas v. González,* 127 D.P.R. 704, 713 (1991). Por su parte, el sub-inciso (2) recoge el criterio de determinación exacta e inmediata, que abarca todos los hechos que puedan ser determinados de manera exacta e inmediata por fuentes que no pueden ser cuestionadas razonablemente. *Id.,* a la página. Un tribunal podrá tomar conocimiento judicial *motu proprio* o a solicitud de parte.

Somos de opinión que el TPI podía tomar conocimiento judicial de las calles que interceptan la Avenida Piñero debido a que son hechos de conocimiento general dentro de la jurisdicción del Tribunal y pueden ser determinados de forma exacta e inmediata. Además, San Juan Gas notificó a la Autoridad de su solicitud para que se tomara conocimiento judicial sobre el asunto previo a la celebración de la vista en su fondo. Además, de los autos del caso no surge que la Autoridad argumentara en torno a si procedía o no tomar conocimiento judicial.

Por otro lado, la Autoridad objeta la determinación de hechos número 15, en cuanto a que el TPI concluyó *"que por la manera en que facturaba Calzadilla Construction por los trabajos, éste no tenía incentivo para mantener bajos los costos de proteger la tubería.*

*Dicho contratista facturaba por los trabajos de administración delegada a base de un por ciento sobre el costo de los trabajos."* █

Sobre el particular, de la transcripción de la vista en su fondo surge que Feliciano fue interrogado en cuanto al acuerdo, si alguno, al que llegó la Autoridad y Calzadilla Construction en cuanto a la protección de la tubería. A tales efectos, Feliciano explicó, en lo pertinente, que por el tipo de trabajo del que se trataba no se podía prever los problemas que se iba a enfrentar el contratista, por lo que no se llegó a un acuerdo. Añadió que en estos casos el contratista no establece un costo fijo por el trabajo, sino que se crea un *"force account"*, es decir, una partida de trabajo por administración delegada. En la misma, se toman en consideración los gastos de mano de obra, equipo, materiales y ganancia del contratista. Por otro lado, Feliciano explicó el contenido del resumen de trabajo del mes de junio de 1984. En síntesis, éste expuso que ese documento resumía lo que se había pagado durante ese mes por concepto de mano de obra, equipo y materiales. Aclaró que de estos totales se obtenía la información para completar el resumen de costo y, así, aplicar los por cientos por seguro social, desempleo, responsabilidad pública más los por cientos del contratista y beneficios (industriales).

De acuerdo a la Regla 10(H) de Evidencia, 32 L.P.R.A. Ap. IV, R. 10(H), existen dos clases de prueba reconocidas y admitidas en los tribunales de justicia. Una se conoce como evidencia directa y la otra como evidencia indirecta o circunstancial. *"La evidencia circunstancial o indirecta es aquélla que prueba un hecho del cual surge una inferencia de la existencia de otro."* Ernesto L. Chiesa, *Práctica Procesal Puertorriqueña*, **Publicaciones JTS**, San Juan, Vol. I, a la página 20 (Supl. 1993). Una inferencia es la deducción que de los hechos probados hace en su discernimiento el juez, sin que medie mandato de la ley. Para que se pueda dar por probado un hecho mediante evidencia circunstancial, es necesario que exista una relación racional entre el hecho básico probado y el hecho inferido.

Del testimonio de Feliciano quedó demostrado que el contratista facturaba a base de un por ciento por encima de los costos incurridos en la protección de la tubería. A base de esta prueba creída por el TPI, éste infirió que Calzadilla carecía de incentivos para mantener bajos los costos de los trabajos por la protección de la tubería.

Al tribunal de instancia le es permitido llegar a aquellas conclusiones e inferencias razonables que estén justificadas a base de su propia experiencia y que surjan de los hechos que considere o estime probados.

Sostiene la Autoridad que la determinación de hechos número 19 formulada por el TPI es contraria al

testimonio de Encarnación y, además, es contradictoria a las expresiones del foro recurrido contenidas en la Sentencia cuya revisión se solicita. Veamos.

Conforme al escrito de apelación, la Autoridad cuestiona la determinación de hechos número 19, en cuanto a que expone que *"[d]urante el contrainterrogatorio del Ingeniero Feliciano Albert y del Sr. Juan Encarnación Medina, ellos aceptaron que no eran los custodios de los récords presentados en el Tribunal. Por lo tanto, éstos no pudieron explicar la supuesta desaparición de los documentos."* ██ La Autoridad alega que esta determinación de hecho es contraria al testimonio de Encarnación quien señaló que él era el custodio del expediente de la oficina de auditoría. Además, aduce que la determinación de hechos del TPI es contraria a sus expresiones en relación a que Encarnación fue presentado como el custodio actual de los documentos que componen el expediente de auditoría de la Autoridad. ██ Es decir, por una parte, el TPI dice que Encarnación es el custodio, mientras que en otra parte, determina que no lo es.

Ciertamente, Encarnación declaró que él era el custodio actual del expediente de auditoría de la Autoridad. Sin embargo, en el transcurso del interrogatorio indicó que no tenía conocimiento personal sobre los documentos que se utilizaron para la auditoría, los cuales fueron producidos por los departamentos de Finanzas y Construcción, por lo que la división de Auditoría no era el custodio de los mismos. Además, según señaláramos anteriormente, Encarnación declaró que no participó en la auditoría y que advino en conocimiento de estos documentos en el momento en que la representación legal de la Autoridad le contactó. Obviamente, Encarnación no era el custodio de los documentos al momento en que se produjeron, sino cuando le fueron requeridos, es decir, para el período en que comenzaron los trámites legales en el caso de epígrafe.

En suma, las determinaciones de hechos formuladas por el TPI están esencialmente avaladas por la evidencia testifical creída por el foro apelado y la prueba documental presentada. En ausencia de pasión, prejuicio o parcialidad, no intervendremos con la apreciación de los hechos que hizo el foro recurrido. Por lo tanto, resolvemos que no se cometió el error alegado.

La Autoridad trae a la atención de este Tribunal, como cuarto error, que el TPI incidió al determinar que ésta había excluido evidencia voluntariamente. El foro recurrido resolvió que la Autoridad había omitido presentar evidencia que acreditara la alegada desaparición de los diarios de trabajo por administración delegada y otros documentos producidos por el contratista. En consecuencia, el TPI aplicó las presunción de las Reglas de Evidencia en términos de que los referidos documentos hubieran resultado prueba adversa de haberse presentado.

Del expediente del caso ante nos, surge que la Autoridad se limitó a presentar como evidencia de los costos incurridos en el proyecto unos documentos que resumían los trabajos que se realizaron para proteger la tubería de San Juan Gas. Ninguno de los documentos contenidos en el expediente de auditoría de la Autoridad y que, a su vez, fueron admitidos como Exhibits en el juicio, sostenían la información contenida en éstos. Es decir, la Autoridad no presentó como prueba de los costos incurridos los diarios de trabajos que alegadamente se prepararon según se completaban las labores en cuanto a la tubería de gas. Más aún, no presentó documento alguno que acreditara la cantidad que ésta le pagó a Calzadilla Construction Corp. La Autoridad se limitó a alegar que los documentos se habían perdido como consecuencia de un huracán. Ningún funcionario de la Autoridad pudo certificar qué ocurrió con los documentos que alegadamente habían sido la fuente de información para preparar los resúmenes de trabajo por administración delegada y la orden de cambio.

Según dispone la Regla 10 de Evidencia, *supra*, en su inciso (G), a los fines de determinar cuáles hechos han quedado establecidos o demostrados, se deberá evaluar la evidencia con sospecha cuando una parte, pudiendo haber ofrecido una prueba más firme y satisfactoria, ofrece una más débil y menos satisfactoria.

La Autoridad no presentó evidencia que controvirtiera la referida presunción. Entendemos, por lo tanto, que no se cometió el error señalado.

Por otro lado, la Autoridad señaló, como quinto error, que el TPI incidió al determinar que los resúmenes de trabajo por administración delegada no presentaban una relación específica de los materiales utilizados en el proyecto. En relación a este asunto en particular, según indicamos anteriormente, Feliciano explicó que los documentos no desglosaban los trabajos realizados para proteger la tubería, ni en qué fecha y lugar se completaron los mismos. ▆ Conforme a lo concluido por el TPI, los documentos presentaban una combinación de los costos del proyecto de mejoras en general y los alegados costos incurridos en proteger la tubería de gas. De los autos del caso, surge que en el resumen del mes de julio se adquirió arena y piedra. Mientras, en los meses de agosto y septiembre, se adquirió arena, piedra, hormigón, acero y mogolla. Ciertamente, estos materiales que fueron adquiridos no coinciden con la recomendación de San Juan Gas de rellenar la tubería exclusivamente con arena y no con piedra o cualquier material cortante. Ante esas circunstancias, tenemos que concluir que la interpretación del TPI a los efectos de que los resúmenes de trabajo no presentaba una relación **específica** de los materiales utilizados en el proyecto, es una interpretación permisible sostenida por la prueba presentada, por lo que no se cometió el error alegado.

Alega también la Autoridad que el TPI erró al autorizar costas en cuanto a unos documentos preparados por el Ingeniero René Acosta (en adelante, "*Acosta*"), perito de San Juan Gas, los cuales no le fueron anunciados ni entregados, ni admitidos, por el foro recurrido. En el recurso de apelación, la Autoridad alegó que San Juan Gas reclamó en el Memorándum de Costas, presentado el 9 de abril de 2003, los gastos relacionados con unos estudios que realizó Acosta el 16 y 17 de abril de 2002, para establecer dónde ubicaba la tubería de gas, a pesar de que nunca se le notificó sobre la existencia de los mismos ni se le entregó copia previo a la celebración del juicio en su fondo. ▆

Del expediente surge que Acosta había sido anunciado como parte de la prueba pericial desde el año 1996. ▆ De los autos del caso, surge que Acosta realizó un estudio el 16 y 17 de abril de 2002 para localizar la tubería de gas a lo largo de la Avenida Piñero y preparó un plano de localización. Por otra lado, de la Minuta de 20 de noviembre de 2002, surge que la Autoridad sometió el plano de localización como prueba ofrecida; sin embargo, el TPI determinó no admitirla como evidencia.

En nuestro ordenamiento jurídico, la concesión de costas por los gastos de perito no es automática. Esta determinación es discrecional del tribunal. Así pues, se debe evaluar la naturaleza y utilidad del testimonio pericial a los fines de determinar si el mismo era necesario para que la parte prevaleciera en el pleito.

En la situación de hechos ante nos, a pesar que el foro recurrido le dio crédito al testimonio pericial, entendemos que el mismo no era necesario para que San Juan Gas prevaleciera en el pleito tomando en consideración el hecho de que la evidencia producida por la Autoridad resultó ser insuficiente en este pleito. Concluimos que no procedía conceder como costas a San Juan Gas la partida consignada en su Memorando de Costas, por la cantidad de cinco mil novecientos dólares (5,900.00) correspondiente a los honorarios del perito Acosta.

Así pues, el foro apelado actuó incorrectamente al conceder como costas a San Juan Gas los honorarios periciales incurridos.

Como último señalamiento de error, la Autoridad alega que el TPI erró al no determinar que San Juan Gas fue temeraria al negarse a reembolsar el costo incurrido en la protección de la tubería de gas. En el caso de autos, San Juan Gas obtuvo sentencia a su favor; esa es la mejor evidencia de que no actuó temerariamente al negarse a pagar la suma reclamada. Consiguientemente, no se cometió el error señalado.

## X

Por los fundamentos antes expuestos, modificamos la sentencia emitida por el Tribunal de Primera Instancia, Sala Superior de San Juan, a los únicos fines de revocar la partida de honorarios del perito que fuera concedida

como costas a San Juan Gas. Se confirma en cuanto a todo lo demás.

Lo acordó el Tribunal y lo certifica la Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General

## ESCOLIOS 2004 DTA 134

**1.** El dictamen del TPI era una resolución interlocutoria y no una sentencia, ya que no puso fin a la controversia entre las partes y no era aún ejecutable.

**2.** Véase el Apéndice del Recurso de Apelación a las páginas 221-223.

**3.** El 19 de octubre de 2000, notificada y archivada en autos el 31 de octubre de ese mismo año, el TPI emitió Orden en la que determinó que consideraría la solicitud de reconsideración de San Juan Gas y ordenó a la Autoridad fijar su posición.

**4.** El TPI ordenó enmendar la Minuta del 25 de septiembre de 2000, a los efectos de aclarar que la sentencia no era final.

**5.** 32 L.P.R.A. Ap. IV, R. 18.

**6.** 32 L.P.R.A. Ap. IV, R. 61.

**7.** 32 L.P.R.A. Ap. IV, R. 60.

**8.** 32 L.P.R.A. Ap. IV, R. 10 (G).

**9.** De los autos del caso no surge copia de este documento.

**10.** El 4 de diciembre de 1984, la Autoridad cursó una carta a la San Juan Gas en la que le exigía el pago de la cantidad de ciento veintisiete mil cuatrocientos cuatro dólares con veintitrés centavos ($127, 404.23). Transcurridos dos años, es decir, el 30 de enero de 1987, la Autoridad emitió una nueva factura a la San Juan Gas por la cantidad de doscientos diez mil cincuenta y cuatro dólares con veintitrés centavos ($210,054.23).

**11.** La determinación de hechos número 2, lee de la siguiente forma:

*"Tomamos conocimiento judicial de que la Avenida Piñero está interceptada a través del tramo de carretera en controversia por las calles Andalucía, Argel, Balares, Bulgaria, Constitución, Cuzco, De Diego, Durango, Escorial, Estonia, Eucalipto y San Patricio."*

**12.** Véase el Apéndice del Recurso de Apelación, a la página 305.

**13.** La determinación de hecho número 15 lee de la siguiente forma:

*"El Ingeniero Feliciano Albert declaró que los exhibits 16, 17, 18 y 19 se prepararon utilizando la información de unos diarios de trabajo (que no fueron sometidos en evidencia) donde día a día se acumulaban los costos. El Ingeniero Feliciano Albert declaró también que los diarios (y por tanto los resúmenes) se preparaban basados en información de costos que a su vez suministraba el contratista, tales como facturas de materiales, equipo y nóminas de empleados. Por tanto, la fuente de información original de los exhibits 16, 17, 18 y 19 de la demandante fue el contratista del proyecto, Calzadilla Construction. Este Tribunal concluye que por la manera en que facturaba Calzadilla Construction por los trabajos, éste no tenía incentivo para mantener bajos los costos de los trabajos. Todo lo anterior nos hace dudar de la confiabilidad de los exhibits 16, 17, 18 y 19 de la demandante para establecer los costos incurridos."* Véase el Apéndice del Recurso de Apelación, a la página 408.

**14.** La determinación de hechos número 19 expone lo siguiente:

*"La Autoridad alegó que estos documentos desaparecieron durante el Huracán Hugo, cosa que no fue acreditada mediante testimonio durante el juicio ni mediante declaración jurada. Durante el contrainterrogatorio del Ingeniero Feliciano Albert y del Sr. Juan Encarnación Median, ellos aceptaron que no eran los custodios de los récords presentados en el Tribunal. Por lo tanto, éstos no pudieron explicar la supuesta desaparición de los documentos."*

**15.** Véase el Apéndice del Recurso de Apelación, a la página 420.

**16.** Véase el Apéndice del Recurso de Apelación, a las páginas 60-76.

**17.** La Autoridad presentó Oposición a Memorando de Costas el 15 de abril de 2003, en la que solamente argumentó que Acosta era empleado de la parte demandada y solicitó que se acreditara los honorarios de éste mediante factura y evidencia de pago que expresara los servicios prestados. Posteriormente, el 22 de abril de 2002, San Juan Gas suscribió Réplica a Oposición a Memorando de Costas, en la que desglosó los honorarios del perito y anejó las facturas correspondientes. Véase el Apéndice del Recurso de Apelación, a las páginas 423-432.

**18.** Véase el Apéndice del Recurso de Apelación, a las páginas 193-196.