Miranda De Hostos, Juez Ponente
*687 TEXTO COMPLETO DE LA SENTENCIA
La parte apelante, Marisol Hernández Corchado, acude ante nos de una sentencia del Tribunal de Primera Instancia, Sala Superior de Carolina, en un caso sobre partición y adjudicación de bienes hereditarios, que ésta presentara en contra de la parte apelada, los coherederos Josefa Hernández Rodríguez, Luis Hernández Rodríguez e Iraida del Socorro González Hernández.
Alega, en síntesis, la parte apelante que erró el tribunal de instancia al determinar que la compraventa de una propiedad entre la causante Alejandrina Rodríguez Feliciano y la madre de la parte apelada también fallecida, la señora Iraida Hernández Rodríguez, fue una disimulada de contrato de donación a favor de la parte apelada Iraida González Hernández, a base de prueba de referencia inadmisible presentada durante la vista, a pesar de la oportuna objeción de dicha parte apelante para su admisibilidad.
Vencido el plazo concedido a la parte apelada sin exponer su alegato, se confirma la sentencia apelada. Veamos los fundamentos.
I
El 2 de mayo de 2001, la parte apelante, Marisol Hernández Corchado, presentó demanda sobre partición y adjudicación de bienes hereditarios en contra de la parte apelada, los coherederos Josefa Hernández Rodríguez, Luis Hernández Rodríguez e Iraidá del Socorro González Hernández. Solicitó la partición de la herencia de su madre, la causante Alejandrina Rodríguez Feliciano. Alegó que como parte de los bienes que se encontraban en el caudal hereditario, estaba una propiedad localizada en la urbanización Villamar, Marginal 17, Isla Verde, Carolina, la cual la causante había adquirido mediante compraventa de su hija y tía de la parte apelante, Iraida Hernández Rodríguez por el precio de $9,000.00 dólares. Ésta última también había fallecido, por lo cual su hija Iraida del Socorro González Hernández, fue declarada heredera de Alejandrina Rodríguez Feliciano por derecho *688 de representación. (Ap. 1, págs. 1-5.)
La parte apelada Iraida del Socorro González Hernández, presentó contestación a la demanda el 11 de junio de 2001, en la cual solicitó que la propiedad localizada en la urbanización Villamar, no fuera declarada como parte del caudal hereditario de su abuela. Alegó que la compraventa de dicha propiedad de Villamar había sido una simulada, pues el propósito de su madre Iraida Hernández Rodríguez al otorgar la compraventa simulada con su abuela, la causante Alejandrina Rodríguez Feliciano, ¡fue protegerla debido a que se estaba muriendo y quería asegurar que dicha propiedad le perteneciera siempre a su hija. (Ap. 4, págs. 18-20.)
Acompañó con la contestación a la demanda copia de una declaración jurada y de una escritura de donación suscritas por su tía, la parte apelada Josefa Hernández Rodríguez, el 15, de febrero de 2000, previo a la presentación de la demanda. En la declaración jurada, la parte apelada, Josefa Hernández Rodríguez, hizo constar lo siguiente:

2. Que en el día de hoy otorgué una Escritura de Donación, la Número Cinco (5) ante el Notario Público Oscar L. Padilla López, en San Juan, Puerto Rico, a favor de mi sobrina Iraida González Hernández.

3. Que mi donación consiste de mi participación de un 25% en la propiedad localizada en la Urbanización Villamar, Marginal Número 17 de Isla Verde, Carolina, Puerto Rico, y que según el Registro de la Propiedad, es la finca número 89 inscrita alfolio 28 del tomo 3 de Carolina I, inscripción 3ra.

4. Que hago esta donación porque ante la Ley de Dios y de los hombres, esta propiedad le pertenece 100% a mi sobrina Iraida González Hernández.

5. Que la mamá de mi sobrina, o sea mi hermana Iraida Hernández Rodríguez, simuló una venta de esta propiedad a mi mamá Alejandrina Rodríguez Feliciano, con el único propósito de proteger a mi sobrina, ya que mi hermana, desde que estaba encinta de mi sobrina, sabía que pronto iba a morir, tal y como sucedió.

6. Que mi mamá Alejandrina Rodríguez Feliciano, nunca trabajó en su vida, siempre fue ama de casa, y no tenía los medios económicos para legítimamente comprar esa propiedad. (Enfasis suplido.)

[■■■]”■

(Ap. 4, pág. 21.)
Luego de varios trámites procesales, entre los cuales se le anotó la rebeldía a la parte apelada y posteriormente fue dejada sin efecto, la parte apelada, Josefa Hernández Rodríguez, presentó contestación a la demanda y reconvención el 5 de septiembre de 2001. (Ap. 15, págs. 51-53.) En la misma, Josefa Hernández Rodríguez alegó lo siguiente:

3- Se niega inciso 4 A, C, 4, ya que la propiedad [localizada en la urbanización Villamar], se reconoce ser de la Codemandada Irradia (sic) González Hernández [..].

(Ap. 15, pág. 51.)
*689 El 18 de abril de 2002, la parte apelada, Luis Hernández Rodríguez, presentó contestación a la demanda. Alegó en dicha contestación a la demanda que según alegado por la parte apelante en la demanda, la parte apelada Josefa Hernández Rodríguez e Iraida del Socorro González Hernández, se habían negado a liquidar la herencia en partes iguales. Además, expresó que estaba de acuerdo con que se dictara sentencia según solicitado por la parte apelante en la demanda. (Ap. 34, págs. 132-133.)
La vista en su fondo se llevó a cabo los días 19 de marzo, 18 de abril y 28 de mayo de 2002. La parte apelante presentó como prueba testifical su testimonio y el de la parte apelada Luis Hernández Rodríguez. La parte apelada presentó el testimonio de Iraida del Socorro González Hernández, el de Josefa Hernández Rodríguez y el de Natividad Rodríguez, hermana de la causante. (Ap. 33 y 36, págs. 129-131 y 135-138.)
La parte apelante, Marisol Hernández Corchado, presentó como prueba documental la declaratoria de herederos de la causante Alejandrina Rodríguez Feliciano, testamento abierto del padre de la parte apelante, el señor Enrique Hernández Rodríguez, escritura sobre división de herencia y exención de contribución sobre herencia de Iraida Hernández Rodríguez, resolución sobre aprobación de operaciones particionales de Alejandrina Rodríguez Feliciano como defensora judicial de la parte apelada Iraida González Hernández, escritura de compraventa sobre la propiedad localizada en Vistamar, escritura de compraventa entre Iraida Hernández Rodríguez e Isla Verde Investment Corporation sobre la propiedad localizada en la urbanización Villamar, escritura de compraventa entre Iraida Hernández Rodríguez y la causante Alejandrina Rodríguez Feliciano sobre la propiedad localizada en la urbanización Villamar y certificación registral, cancelación de hipoteca y pagaré constituido por Iraida Hernández Rodríguez sobre la propiedad de la urbanización Villamar por la cantidad de $9,300.00 y escritura de hipoteca constituida por Alejandrina Rodríguez Feliciano sobre la propiedad de la urbanización Villamar por la cantidad de $3,081.00 dólares. (Ap. 33 y 49-59, págs. 129-131 y 177-235.)
La parte apelada presentó como prueba documental la escritura de donación y aceptación suscrita por Josefa Hernández Rodríguez sobre su participación en la herencia de Alejandrina Rodríguez Feliciano, declaración jurada anejada a la escritura de donación, documento de la Administración del Seguro Social sobre Alejandrina Rodríguez Feliciano, documento de la Administración del Seguro Social sobre Iraida González Hernández, designación de beneficiario del Sistema de Retiro de la UPR de Iraida Hernández Rodríguez, desembolso de la Asociación de Empleados del ELA a favor de Alejandrina Rodríguez Feliciano y certificación registral de la propiedad localizada en la urbanización Villamar. (Ap. 60-66, págs. 236-260.)
Según el testimonio de la parte apelante, al cual el tribunal de instancia no le otorgó ninguna credibilidad, “Alejandrina [Rodríguez] compró la propiedad de Villamar en 1958 a Iraida Hernández. La propiedad costó $9,000.00 [dólares]’’. (ENP, pág. 2.)
Por otro lado, la parte apelada, Iraida del Socorro González Hernández, sostuvo a través de su testimonio, el cual mereció entera credibilidad por parte del tribunal, que a su mamá Iraida Hernández le diagnosticaron cáncer a los pocos meses de estar encinta de ella. Que su mamá le dijo a su abuela Alejandrina que le iba a dejar la casa de Villamar y el seguro social a su abuela para que se encargara de ella y la criara. Sostuvo además que: [...] por eso es que ellas hacen la compraventa ficticia. Que su abuela le hablaba de estas cosas toda la vida desde que ella recuerda. [...] Que la casa, la mamá se la dejo (sic), para ella para que su papá no pudiera pedir nada.
(ENP, pág. 10.)
Según surge de ambos proyectos de exposición narrativa de la prueba, también testificó Natividad Rodríguez, hermana de la causante Alejandrina Rodríguez. Esta expresó recordar que un día, en el balcón, escuchó cuando Iraida Hernández le dijo a Alejandrina Rodríguez que cuando ella muriera, quería que la casa de Villamar fuera para Iraida González, que se vendiera sólo para los estudios de la nena. (ENP, pág. 12, Objeción a ENP, pág. 3.)
*690 Considerando la prueba ante sí, el tribunal de instancia emitió sentencia el 2 de julio de 2002, determinando que la propiedad localizada en Villamar le correspondía a la parte apelada Iraida González Hernández y no formaba parte del caudal hereditario de Alejandrina Rodríguez Feliciano, pues la compraventa otorgada entre la causante y la madre de la parte apelada Iraida Hernández Rodríguez fue una disimulada de donación. El tribunal de instancia expresó en su sentencia que no le otorgó ninguna credibilidad a la prueba testifical presentada por la parte apelante. (Ap. 37, págs. 139-143.)
Inconforme con la determinación del tribunal de instancia, la parte apelante, Marisol Hernández Corchado, acude ante nos.
II
Expuestos los hechos pertinentes a la controversia ante nuestra consideración, procedemos a discutir la norma jurídica aplicable.
A
Aspectos generales sobre los contratos
Los contratos son negocios jurídicos que existen desde que concurren los requisitos de consentimiento, objeto y causa; y desde ese momento, producen obligaciones que tienen fuerza de ley entre las partes contratantes. Artículos 1213 y 1044 de Código Civil, 31 L.P.R.A. sees. 3391, y 2994; Master Concrete Corp. v. Fraya S.E., opinión de 30 de noviembre de 2000, 2000 J.T.S. 192, pág. 456.
Nuestro ordenamiento jurídico dispone que los contratos son fuente de obligaciones que se perfeccionan desde que las partes contratantes consienten voluntariamente a cumplir con los mismos. Las partes contratantes no solamente se obligan a lo pactado, sino también a toda consecuencia que sea conforme a la buena fe, al uso y a la ley. Artículo 1210 de Código Civil, 31 L.P.R.A. see. 3375; Trinidad García v. Chade, opinión de 18 de enero de 2001, 2001 J.T.S. 10, pág. 792; Amador Parrilla v. Concilio Iglesia Universal, 150 D.P.R. 571, 581-582 (2000).
Las partes contratantes pueden pactar las cláusulas, pactos y condiciones que le sean convenientes, siempre y cuando las mismas no sean contrarias a las leyes, a la moral, ni al orden público. Artículo 1207 de Código Civil, 31 L.P.R.A. see. 3372; Jarra Corporation v. Axxis Corporation, opinión de 30 de noviembre de 2001, 2001 J.T.S. 167, pág. 488.
B
La simulación del contrato
La teoría de la simulación del contrato está enmarcada dentro del concepto de causa de los contratos, como parte indispensable para la validez de todo contrato. El contrato simulado expresa una causa falsa con el propósito de violar la ley u ocultar ante terceros la verdadera causa del contrato. Martínez v. Colón Franco, Concepción, 125 D.P.R. 15, 25 (1989); Reyes v. Jusino, 116 D.P.R. 275, 281-282 (1985).
Así lo establece el Código Civil en el artículo 1227, al disponer que:

“Los contratos sin causa, o con causa ilícita, no producen efecto alguno. Es ilícita la causa cuando se opone a las leyes o a la moral. ”

31 L.P.R.A. 3432.
La simulación del contrato se ha definido como el acto o negocio jurídico que por acuerdo de las partes se celebra exteriorizando una declaración recepticia no verdadera para engañar a terceros, “sea que ésta carezca de *691 todo contenido, o bien que esconda uno verdadero diferente al declarado”. Díaz García v. Aponte Aponte, 125 D.P.R. 1, 8 (1989).
Existen dos tipos de simulación del contrato: la absoluta y la relativa. La simulación absoluta es aquélla en que las partes no desean celebrar ningún negocio y el acto jurídico meramente crea una apariencia de negocio. El contrato, por carecer de causa, resulta nulo e inexistente y, en consecuencia, no produce efecto jurídico alguno. Díaz García v. Aponte Aponte, supra, pág. 10; Guzmán v. Guzmán, 78 D.P.R. 673, 677-678 (1954).
Por otro lado, la simulación relativa es aquélla en la que las partes celebran un contrato mediante el cual encubren otro distinto que es realmente el que las partes interesan celebrar. Nuestro Código Civil en el artículo 1228, dispone lo siguiente:
La expresión de una causa falsa en los contratos dará lugar a la nulidad, si no se probase que estaban fundados en otra verdadera.
31 L.P.R.A. see. 3433.
Cuando ocurre la simulación relativa, se anula el contrato simulado y cobra vigencia el verdadero contrato disimulado, siempre y cuando el contrato simulado cumpla con todos los requisitos para su validez. Por el contrario, cuando el negocio disimulado no cumple con todos los requisitos para su validez, se produce una situación jurídica en la cual resultan nulos ambos contratos. Por lo tanto, ninguno de los contratos produce efecto jurídico entre las partes. Díaz García v. Aponte Aponte, supra; Guzmán v. Guzmán, supra, págs. 678-683.
Sobre el particular, nuestro más alto foro expresó:

Nuestro ordenamiento jurídico, siguiendo la tradición española, ha optado por la vertiente de tolerar limitadamente los contratos simulados que disimulan una causa verdadera y lícita. Probada la simulación, el contrato simulado queda eliminado, para dar vigencia y efecto al verdadero y disimulado. [...]. Conviene precisar a tales efectos el alcance de la simulación cuando se expresa una causa falsa en los contratos. Primero, la simulación por sí misma no hace ilícito o nulo el negocio. Segundo, no obstante, se cierne sobre el negocio una mácula de sospecha. Tercero, una vez descubierta la simulación, pierde vigencia la presunción de que la misma es lícita, y ya no recae sobre el deudor la carga de probar su existencia. Cuarto, se ha creado una presunción de simulación absoluta contra el negocio disimulado que compete al gestor rebatir mediante la existencia de una causa verdadera y lícita. (Citas omitidas.) (Enfasis suplido.)

Reyes v. Jusino, supra, pág. 284.
El caso típico de una simulación relativa es la celebración de un contrato de compraventa que realmente encubre una donación. Al ocurrir la simulación del contrato, el contrato de compraventa resulta nulo y la donación cobra vigencia, siempre y cuando cumpla con todos los requisitos para su validez. Nuestro más alto foro aí determinar si el contrato de donación disimulado era válido, expresó lo siguiente en cuanto a sus requisitos:

[...]. Impugnada con éxito la compraventa efectuada por simulación de causa, sostuvimos que tampoco podía dársele eficacia ál contrato de donación disimulada, ya que la aceptación era indebida porque: a) no 
*692
bastaba la hecha por el mandatario verbal tratándose de una donación de bienes inmuebles; y b) la ratificación posterior no convalidaba el acto por haberse otorgado cuando la donante estaba incapacitada.

Resumiendo, pues, todo cuanto se requiere para que la donación disimulada cumpla con las formalidades legales es que el contrato simulado que la encubre se haya otorgado mediante escritura pública; que se describan individualmente los bienes donados, y en el caso de la donación onerosa, que se expresen las cargas que el donatario asume; y que se haga constar la aceptación del donatario en la misma o en otra separada, podiendo deducirse esta aceptación de la firma del documento simulado. [...]. (Énfasis suplido.)

Hernández Usera v. Secretario de Hacienda, 86 D.P.R. 13, 25 (1962).
Uno de los elementos del negocio de compraventa que da lugar a una simulación en la cual el contrato disimulado es la donación, es el precio, pues en la compraventa uno de los contratantes se obliga a entregar una cosa determinada y el otro a pagar el precio cierto por la cosa. El precio tiene que ser real y efectivo, por lo cual, es el elemento más relevante del contrato de compraventa. Por lo tanto, es una necesidad que el contrato de compraventa contenga un precio real y efectivo. De lo contrario, el contrato de compraventa sería uno simulado que encubre un contrato de donación simulado. Reyes v. Jusino, supra, pág. 285.
Por último, al determinar si un contrato es simulado, el tribunal deberá:

“[■■■]■

[...]. En cuanto a la primera, valga recordar que en este tipo de casos son testigos idóneos “aquellas personas a quienes el simulador solicitó primitivamente su complicidad en la simulación y que por razones de moralidad, miedo, económicas o lo que fuere, se la negaron”. [...]. Igualmente, se imponía un análisis más detenido de las circunstancias relacionadas al tiempo o momento del otorgamiento de la escritura. Como expusimos, este factor es considerado vital por la doctrina, como uno de los principales indicadores demostrativos de un cuadro de simulación negocial. (Citas omitidas.) (Énfasis suplido.)

[...]”

Díaz García v. Aponte Aponte, supra, págs. 12-13.
C
Revisión judicial
Es norma jurisprudencial reiteradamente establecida aquélla que postula que en el ámbito apelativo no se intervendrá con las determinaciones de hechos y la adjudicación de credibilidad efectuada por el juzgador de los hechos, en ausencia de error manifiesto, pasión, prejuicio o parcialidad. Rodríguez Báez v. Nationwide Insurance Company, opinión de 18 de abril de 2002, 2002 J.T.S. 61, pág. 1013; Trinidad García v. Chade, supra, pág. 793.
Sin embargo, la norma de que un tribunal apelativo no debe alterar las determinaciones de hechos del tribunal sentenciador no aplica cuando la evidencia consiste de deposiciones, estipulaciones escritas u orales, o por hechos incontrovertidos por las alegaciones o la prueba. Cuando estamos ante prueba documental, los tribunales de apelación o revisión estamos en igual posición que la sala sentenciadora para hacer nuestras propias determinaciones y no podemos renunciar a ello sin afectar la efectividad de nuestra función revisora. Ortiz Malavé v. Meaux, opinión de 4 de abril de 2002, 2002 J.T.S. 47, pág. 929; Moreda Toledo v. Maruxa Rosselli, 150 D.P.R. 473, 478-479 (2000).
*693 Por último, reiteradamente nuestro más alto foro ha expresado que la revisión de una decisión se da contra la sentencia y no contra sus fundamentos. Vega v. Alicea, 145 D.P.R. 236, 244 (1998); Sánchez Betancourt v. Eastern Airlines, 114 D.P.R. 691, 695 (1983).
m
Aplicación de norma jurídica
Es un hecho incontrovertible que el contrato de compraventa suscrito entre Iraida Hernández Rodríguez y Alejandrina Rodríguez Feliciano, cumple con los requisitos indispensables de objeto y consentimiento de las partes contratantes. Ahora bien, dicho contrato adolece del requisito de no poseer una causa válida.
La verdadera causa del contrato objeto de estudio no era transferir la casa de Villamar a Alejandrina Rodríguez Feliciano, era reservarla como garantía económica a una bebé de nueve (9) meses, Iraida del Socorro González Rodríguez. (Véase, Sentencia, Ap. 46, pág. 172.) Por lo cual, estamos ante una simulación del contrato relativa. Las partes contratantes celebraron un contrato de compraventa mediante el cual encubrieron otro distinto, el de donación.
A pesar de la nulidad del contrato simulado de compraventa, existía la posibilidad de que cobrara vigencia el verdadero contrato disimulado de donación, siempre y cuando éste cumpliera con todos los requisitos para su validez. Sin embargo, el contrato de donación disimulado entre las partes contratantes no cumple con todos los requisitos de forma para que surta efecto. Tratándose de la donación de un bien inmueble, su aceptación por parte de Alejandrina Rodríguez Feliciano debió ser por escrito, lo cual no surge del expediente. Tampoco surge de la prueba admitida en evidencia, la escritura pública mediante la cual se supone se hubiese otorgado dicho contrato de donación del referido inmueble.
Dadas las circunstancias de que el contrato disimulado de donación tampoco cumple con todos los requisitos necesarios para su validez, éste tampoco tuvo efecto legal alguno. Por lo tanto y dadas las circunstancias antes expresadas según lo concluyó correctamente el foro de instancia, se declararon nulos tanto el contrato de compraventa como el de donación. Consecuentemente, tras no haberse vendido ni donado la propiedad inmueble objeto de controversia, ésta siempre se mantuvo en el caudal de Iraida Hernández Rodríguez, cuya única heredera lo es su hija, la parte apelada, Iraida del Socorro González Hernández.
Concluimos que no incidió el tribunal de instancia al determinar que la propiedad localizada en Villamar le correspondía a la parte apelada, Iraida del Socorro González Hernández, en su totalidad, pues no formaba parte del caudal hereditario de Alejandrina Rodríguez Feliciano.
IV
Por los anteriores fundamentos, se confirma la sentencia apelada.
Lo acordó y manda el Tribunal y lo certifica la Secretaria General.
Aida Ileana Oquendo Graulau
Secretaria General