CC-1998-951                                                    1

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Manuel Moreda Toledo et al<br>    Recurrido<br><br>    v.<br><br>Maruxa Rosselli Vda. de Rodríguez<br>    Recurrida<br><br>José Guillermo Arias Rodríguez; Eduardo<br>José Arias Rodríguez<br>    Peticionarios | Certiorari<br><br>2000 TSPR 56 |

Número del Caso: CC-1998-0951

Fecha: 03/03/2000

Tribunal de Circuito de Apelaciones: Circuito Regional I

Panel Integrado por:            Hon. Ramos Buonomo
                                Hon. González Román
                                Hon. Córdova Arone

Abogados de José Guillermo Arias Rodríguez y Eduardo José Arias
Rodríguez:

                                Lcdo. Peter Ortiz
                                Lcda. Sylvia E. Cancio González
                                Lcdo. Eugene F. Hestres

Abogado de Manuel Moreda Toledo:

                                Lcdo. Ernesto F. Rodríguez Suris

Abogado de Maruxa Rosselli Vda. de Rodríguez:

                                Lcdo. Jorge Miguel Suro Ballester

Materia: Sentencia Declaratoria

Este documento constituye un documento oficial del Tribunal
Supremo que está sujeto a los cambios y correciones del
proceso de compilación y publicación oficial de las
decisiones del Tribunal. Su distribución electrónica se hace
como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Manuel Moreda Toledo

    Demandante-Recurrido

       Vs.

                         CC-1998-951     Certiorari

Maruxa Rosselli

    Demandado

PER CURIAM

San Juan, Puerto Rico, a 3 de marzo de 2000.

Por entender que de la prueba extrínseca presentada por las partes no se desprende que el testador tuvo la intención de acumular un legado dejado a la viuda con la cuota viudal usufructuaria, revocamos.

I.

Guillermo Rodríguez Benítez falleció en San Juan, habiendo otorgado un testamento ológrafo. Le sobrevivieron la señora Maruxa Rosselli, con quien el testador estaba casado en segundas nupcias; su única hija, Ilia Rodríguez Molina; y sus nietos, José Guillermo y Eduardo Arias Rodríguez.

La única hija del testador repudió la herencia mediante escritura pública. De esta forma concurren a la herencia la viuda del testador y los nietos de éste. En el testamento, el testador legó el tercio de mejora a sus nietos y el tercio de libre disposición a su viuda.

En 1991 el albacea del testamento presentó ante el extinto Tribunal Superior una acción de sentencia declaratoria para que se aclararan, entre otras cosas, los derechos de la viuda del testador. En 1993 dicho tribunal emitió una sentencia en la que determinó que la voluntad del testador había sido que su viuda recibiera tanto el legado del tercio de libre disposición, como la cuota viudal usufructuaria que determina la ley.

Inconformes con lo allí resuelto, los nietos del testador, los hermanos Arias Rodríguez, acudieron ante este Tribunal solicitando la revocación de la sentencia. Alegaron, entre otras cosas, que a diferencia de lo resuelto por el foro de instancia, no procedía la acumulación de la cuota viudal usufructuaria con el legado del tercio de libre disposición.

Mediante la Opinión de 18 de octubre de 1996, Moreda Toledo v. Maruxa Rosselli Vda. de Rodríguez y otros, 140 D.P.R.___ (1996), resolvimos que la norma que rige en nuestra jurisdicción es que cualquier legado hecho a la viuda del causante se entenderá hecho a cuenta de la legítima del cónyuge viudo, a menos que se desprenda del testamento la

clara intención del causante de acumular la cuota viudal usufructuaria y el legado.

En aquella ocasión, tras examinar las cláusulas testamentarias relativas a las disposiciones a favor de la viuda, así como las restantes disposiciones del testamento, ordenamos que se devolviera el caso al foro de instancia para que se presentara prueba extrínseca. Esto con el fin de aclarar las referidas clásulas, a tenor con la verdadera intención del testador en cuanto a la acumulación o no acumulación. Señalamos que, de proceder la acumulación del legado de libre disposición con la cuota viudal usufructuaria, el tercio de mejora dejado a los nietos sería gravado con el usufructo viudal.

El tribunal de instancia prosiguió con los procedimientos de forma compatible con nuestra Opinión. La señora Rosselli presentó ante el tribunal *a quo* una moción de sentencia sumaria, a la que se opusieron los nietos del causante, los hermanos Arias Rodríguez.

El tribunal de instancia, luego de considerar las mociones presentadas y los documentos que las acompañaban, dictó sentencia sumaria en la que resolvió que la viuda del testador tenía derecho a recibir el legado de libre disposición, así como también la cuota viudal usufructuaria que le correspondía por virtud de ley. Entendió que esta fue la verdadera intención del testador.

Inconformes con la sentencia dictada por el foro de instancia, los nietos del causante recurrieron al Tribunal

de Circuito de Apelaciones, el cual confirmó la sentencia impugnada. Basó su determinación en el principio general de que un tribunal apelado no ha de sustituir sus determinaciones con las del tribunal juzgador.

Nos solicitan José Guillermo y Eduardo Arias Rodríguez, nietos del causante, que dejemos sin efecto la sentencia dictada por el Tribunal de Circuito. Luego de examinadas cuidadosamente las comparecencias de las partes, así como los documentos que obran el expediente, estamos en posición de resolver.

II.

El Tribunal de Circuito de Apelaciones resolvió que no habría de intervenir en la apreciación de la prueba hecha por el foro de instancia. Sustentó su determinación en la reiterada doctrina de que en apelación o revisión los tribunales apelativos no alteraremos las determinaciones de hecho del tribunal *a quo* a menos que las mismas carezcan de base en la prueba o cuando se determine que existió pasión, prejuicio, parcialidad. Pueblo v. Maisonave Rodríguez, 129 D.P.R. 49 (1991); Pueblo v. Cabán Torres, 117 D.P.R. 645 (1986).

No obstante, la mencionada norma se aplica exclusivamente a testimonios orales vertidos en presencia del juez de hechos, ya que éste es quien observa la actitud de los testigos, su forma de declarar, sus gestos, y en general, su conducta al prestar declaración. Castro v. Meléndez, 82 D.P.R. 573 (1961).

De manera que, la norma de que un tribunal apelativo no debe alterar las determinaciones de hecho del tribunal sentenciador no aplica cuando la evidencia consiste de deposiciones, estipulaciones escritas u orales, o por hechos incontrovertidos por las alegaciones o la prueba. Sanabria v. Sucn. González, 82 D.P.R. 885 (1961); Castro v. Meléndez, supra. Cuando estamos ante prueba documental, los tribunales de apelación o revisión estamos en igual posición que la sala sentenciadora para hacer nuestras propias determinaciones y no podemos renunciar a ello sin afectar la efectividad de nuestra función revisora. Castro v. Meléndez, supra.

En el caso de marras, el Tribunal de Primera Instancia utilizó el mecanismo de sentencia sumaria y dictó sentencia a base de su apreciación de declaraciones juradas, deposiciones y otros documentos sometidos por las partes. De manera que, el Tribunal de Circuito de Apelaciones estaba en posición de hacer sus propias determinaciones a base de un examen de la prueba documental presentada por las partes.

Aclarado este extremo, procede determinar cuál fue la voluntad real del causante en el caso de autos, a la luz de lo que dispone nuestro ordenamiento jurídico acerca de la interpretación testamentaria.

III.

El testamento es un negocio jurídico que tiene su médula en una voluntad, que se declara a través de las formalidades y solemnidades impuestas por la ley. Díez

Picazo, Sistema de Derecho Civil: Derecho de Familia y Derecho de Sucesiones, Madrid Editorial Tecnos, Volumen IV, Pág. 459.

Nuestro ordenamiento sucesorio está cimentado en dar cumplimiento a la voluntad del testador en la disposición de sus bienes en lo que no sea contrario a la ley. Torres Ginés v. ELA, 118 D.P.R. 431 (1987). Lo fundamental es que prevalezca la voluntad real del testador y el rol judicial en materia de interpretación testamentaria consiste en descubrir dicha voluntad a fin de que se produzcan en su día los efectos queridos por el testador dentro del marco permitido por ley. En reiteradas ocasiones este Tribunal ha expresado que la voluntad del testador es la "ley de la Sucesión". Fernández Franco v. Castro Cardoso, 119 D.P.R. 154 (1986); Calimano Díaz v. Rovira Calimano, 113 D.P.R. 702 (1983); Viuda de Sambolín v. Registrador, 94 D.P.R. 320 (1967).

Por la naturaleza del testamento, su interpretación se da una vez fallece el testador. Es otro el que se coloca en el lugar del testador para tratar de reconstruir lo que éste efectivamente quiso, pero teniendo en cuenta siempre que en el testamento se encuentra una declaración de voluntad que ha quedado cristalizada. Licari v. Dorna, res. el 2 de junio de 1999, 99 TSPR 84.

Respecto a cómo ha de interpretarse un testamento, el Artículo 624 del Código Civil establece el punto de partida:

> Toda disposición testamentaria deberá entenderse
> en el sentido literal de sus palabras, a no ser
> que aparezca claramente que fue otra la voluntad
> del testador.  En caso de duda se observará lo que
> parezca más conforme a la intención del testador,
> según el tenor del mismo testamento.  31 L.P.R.A.
> sec. 2129.

De manera que, el precitado artículo remite como el primer paso en la tarea de interpretar el testamento, indagar la voluntad del testador del texto mismo de la disposición testamentaria. Cuando el texto es claro, allí ha de finalizar la interpretación testamentaria. La labor judicial resulta sencilla en estos casos. Véanse Moreda Toledo v. Rosselli, supra; Torres Ginés v. E.L.A., supra.

Ahora bien, si luego de examinada la disposición testamentaria, subsisten dudas sobre la voluntad del testador será preciso recurrir a los medios de prueba intrínsecos, es decir, se debe observar lo que parezca más conforme a la intención del testador según el tenor del mismo testamento.  31 L.P.R.A. sec. 2129; Licari v. Dorna, supra. En otras palabras, se debe tratar de indagar la voluntad real del testador a base de un análisis del testamento en su totalidad. Véase Puig Brutau, Fundamentos de Derecho Civil, Barcelona, Editorial Bosch, 1977, Vol. 2, Tomo V, págs. 249-252.

Una vez agotada la etapa de interpretación de la disposición mortis causa por medios de prueba intrínsecos, si todavía subsisten dudas sobre la voluntad del testador, es permisible acudir a la medios de prueba extrínseca. Esta

forma de interpretación de testamentos consiste en acudir a conductas, declaraciones o actos del testador que por definición se hallan fuera del testamento. Licari v. Dorna, supra.

Algunos de los medios extrínsecos que pueden ser utilizados para indagar cuál fue la voluntad real del testador son testamentos anteriores, cartas, lo que se conocía sobre hábitos y costumbres del testador, el clima prevaleciente en sus relaciones de familia, el lenguaje que acostumbraba usar, etc. González Tejera, Derecho Sucesorio Puertorriqueño, San Juan, Ed. Ramallo, 1983, Vol., II, pág. 66.

En la labor de interpretación testamentaria es de enorme trascendencia examinar, entre otros asuntos, la cultura, las costumbres, mentalidad y hasta el grado de cultura jurídica del testador. Licari v. Dorna, supra; Torres Ginés v. E.L.A., supra.

Finalmente, vale señalar que la interpretación de un testamento no puede tener el efecto de sustituir la voluntad declarada del testador por otra no declarada en lo absoluto. Véase, González Tejera, supra a la pág. 55. La interpretación del testamento no se extiende a incluir lo no dicho y a dar por cumplido lo omitido. Rodríguez Sardenga v. Soto Rivera, 108 D.P.R. 565 (1979).

Teniendo en mente estos principios generales acerca de la interpretación testamentaria y lo dispuesto en Moreda v. Rosselli, supra, debemos determinar si del testamento se

desprende la clara intención del testador de acumular el legado hecho a la viuda del causante y la cuota viudal usufructuaria.

Al interpretar el testamento del señor Guillermo Rodríguez Benítez corresponde, en primer lugar, examinar el texto mismo de la disposición testamentaria. Si luego de examinar la cláusula en cuestión subsisten dudas será preciso indagar la verdadera voluntad del testador a base de las restantes disposiciones del testamento. Finalmente, agotadas estas dos primeras etapas de interpretación testamentaria, es que correspondería examinar la prueba extrínseca sometida por las partes. Esto con el fin de aclarar la ambigüedad de las cláusulas testamentarias en cuestión y determinar cuál fue la intención del testador en el caso de autos.

IV.

Por ser de gran pertinencia en el presente caso, transcribimos literalmente el testamento de Guillermo Rodríguez Benítez:

----------TESTAMENTO----------

---En caso de mi fallecimiento antes de hacer un testamento formal, es mi deseo hacer el siguiente legado:--------

---Del tercio de libre disposición lego a la Sra. Maruxa Rosselli, residente en el Condominio Torre de la Reina, San Juan, P.R., trescientos mil dólares ($300,000.00) libre de cualesquiera contribuciones aplicables, que serán pagadas también del tercio de libre disposición.---

---Este legado será pagado en efectivo en su totalidad.-

---Nombro albacea y administrador de la herencia al Lcdo. Manuel Moreda, también residente del Condominio Torre de la Reina, con todos los poderes que le confiere la ley y los demás que sean necesarios para satisfacer este legado con la mayor prontitud. Relevo al Lcdo. Moreda de necesidad de presentar fianza.----------------

---Después de pagado este legado a satisfacción de la Sra. Rosselli, el Lcdo. Moreda pasará todos los asuntos relacionados con la herencia al Lcdo. José Luis Arias, mi yerno, a quien de ahí en adelante nombro albacea. No he nombrado a mi yerno albacea desde un principio para relevarlo de cualquier conflicto de interés que pudiera presentársele.---------------------

---No he pedido a ningún testigo que firme este documento porque no deseo que otras personas queden informadas de este legado en estos momentos. Guillermo Rodríguez (firma).------------------------------------

----San Juan, P.R. (8-VIII-83)-------------------------

---Enmienda No. 1 a mi testamento de 8-VIII-83.---------

---El legado que hago a la Sra. Maruxa Rosselli será del total de la tercera parte de libre disposición, en vez de los $300,000 que se menciona en el testamento a que me refiero.------------------------------------

---La referencia a las "contribuciones aplicables" será alterada como sea necesario en vista del aumento en el legado al total de libre disposición.------------------

--Lo demás queda sin alterar.-- ---30-1-86, Guillermo Rodríguez (firma)------------------------------------

---Enmienda Nm. 2 a mi testamento de 8-VIII-83.---------

---1. Aclaro que el legado que hago a Maru Rosselli es de la cantidad máxima de libre disposición en el momento de mi muerte.------------------------------------

---2. El albacea y administrador de mi herencia será el Lcdo. Manuel Moreda a través de todo el proceso de distribución, hasta su liquidación final.--------------

---3. Maru tendrá derecho a seleccionar lo que ella desee de mi herencia, el resto a pagársele de contado o en cualquier otra forma que ella desee.----------------

---SJ, PR 8-VIII-87 Guillermo Rodríguez (firma).--------

---Hace ya algunos años hice un testamento escrito a mano, y está en un sobre dirigido al Lic. Manuel Moreda. Todo lo que digo allí sigue siendo válido. Quiero, sin embargo añadir lo siguiente: De las 2/3 partes que es herencia forzosa 1/3 es de mi hija Ilia y la otra tercera la lego a mis nietos José Guillermo y Eduardo José por partes iguales.------------------------------

------Guillermo Rodríguez (firma).---------------------

---4 sept. 1989."-------------------------------------

La lectura del testamento refleja que el causante adjudicó la totalidad de su caudal. Distribuyó el tercio de mejora entre sus dos nietos, José Guillermo y Eduardo José Arias Rodríguez, en partes iguales; el tercio de libre disposición lo legó a favor de la viuda, Maruxa Rosselli; y el tercio de legítima estricta recayó sobre su única hija, Ilia Rodríguez Molina.

Respecto al asunto que nos ocupa en el caso de marras, el testador dispuso: "El legado que hago a la Sra. Maruxa Rosselli será del total de la tercera parte de libre disposición". También indicó que "el legado que hago a Maru Rosselli es de la cantidad máxima de libre disposición en el momento de mi muerte".

El lenguaje de las cláusulas anteriormente mencionadas, a los efectos de que el testador en su testamento le deja a su esposa el "total" del tercio libre y la "cantidad máxima de libre disposición", no revelan con claridad cuál fue la verdadera intención del testador respecto a la acumulación. Así lo entendimos en nuestra Opinión anterior en el caso de epígrafe. Allí también señalamos que el examen de las

restantes disposiciones tampoco nos permite determinar la voluntad real del testador ni interpretar las referidas cláusulas ambiguas.

En esta fase del caso lo que nos resta es recurrir a la última etapa en la interpretación testamentaria, es decir nos corresponde examinar prueba extrínseca para poder aclarar las disposiciones testamentarias y determinar finalmente la intención del testador. Con esto agotamos "todos los medios a nuestro alcance que nos permitan demostrar la verdadera intención del causante". Moreda v. Rosselli, supra.

Luego de estudiar detenidamente la prueba sometida por las partes, a saber, borradores del testamento, declaraciones juradas, así como transcripciones de deposiciones, este Tribunal está convencido de que no fue la intención del testador de acumular el legado con la cuota viudal. Veamos.

V.

De una lectura de la prueba extrínseca sometida por las partes se desprende con meridiana claridad que el causante recibió un amplio y extenso asesoramiento en materia de derecho sucesorio por parte de sus abogados.[1] Más aun, dicho asesoramiento incluyó lo relativo a la acumulación de la cuota viudal y el legado correspondiente al tercio de libre

---

[1]Declaraciones Juradas del Lcdo. Lino Saldaña, Lcda. Elba Rosa Rodríguez y el Lcdo. Ignacio Rivera, Moción de Sentencia Sumaria, Apéndice Recurso de Certiorari, págs. 212-220.

disposición.[2]  Además, se le explicó al testador cómo podía

gravar el tercio de mejora.  Especial atención y énfasis

merece el hecho de que uno de los abogados del causante le

preparó a éste un borrador o proyecto de testamento abierto,

el cual proveía específicamente para la acumulación de cuota

y legado al disponer que la totalidad del tercio de mejora

conferido a los nietos estaría sujeto al usufructo viudal.[3]

En lo pertinente dicho proyecto de testamento disponía lo

siguiente:

> "(a)Deja el tercio de legítima estricta a su hija Ilia Rodríguez Molina.

> (b)Deja el tercio de mejora a sus nietos Guillermo Arias Rodríguez y Eduardo José Arias Rodríguez, por partes iguales, **sujeto al usufructo legal que sobre la totalidad de dicho tercio corresponderá a su esposa después de su muerte.**(Énfasis Suplido).

> (c)Deja el tercio de libre disposición a su esposa Maruxa Rosselli...[4]

Aunque el causante nunca otorgó dicho testamento,

acogió en su testamento ológrafo las cláusulas referentes a

la división de su caudal en cuanto a la legítima estricta y

el tercio de libre disposición. Sin embargo, en cuanto al

tercio de mejora no incluyó la disposición relativa a que el

mismo estuviese "sujeto al usufructo legal".

---

[2]Declaración Jurada del Lcdo. Lino Saldaña, Apéndice Recurso de Certiorari, pág. 212-217; Declaración Jurada de Ignacio Rivera, Apéndice Recurso de Certiorari, págs. 220-221; Transcripción de Deposición tomada al Lcdo. Lino Saldaña, Apéndice de Recurso de Certiorari, pág. 271.
[3]Oposición a Moción de Sentencia Sumaria, Apéndice Recurso de Certiorari, págs. 263-270.
[4]Oposición a Moción de Sentencia Sumaria, Apéndice Recurso de Certiorari, pág. 263.

Según admiten ambas partes el causante era una persona sumamente inteligente, capacitada, analítica, y detallista. Esto junto al hecho de que el testador **conocía la forma en que debía redactar el testamento para que hubiera la acumulación**, nos impide imputarle al testador en la consignación de su última voluntad por vía testamentaria, un uso laxo en la expresión y redacción de su testamento.

Sin embargo, aun analizando los documentos de la forma más favorable a la señora Rosselli, lo único que éstos podrían establecer es que en ciertas ocasiones el causante manifestó verbalmente su interés de "beneficiarla" o "favorecerla". Esto no puede equipararse con la intención clara y precisa que se requiere para concluir que fue la voluntad del testador acumular la cuota y el tercio de libre disposición. **El testador "benefició" a la viuda en la medida en que le legó al tercio de libre disposición por completo en pleno dominio. Además, le concedió el derecho a escoger y dispuso que se le pagara con prontitud su legado**. El llamado "beneficio" no implica acumular el legado y la cuota, lo que conllevaría necesariamente gravar el legado dejado por el testador a sus nietos.

Además, es preciso señalar que las manifestaciones que alegadamente hizo el testador a los efectos de que era su intención "beneficiar" a la señora Rosselli fueron hechas antes de la fecha de la última enmienda al testamento ológrafo, que fue el 4 de septiembre de 1989. Así, de la declaración jurada suscrita por el Lcdo. Ignacio Rivera, se

desprende que éste sostuvo una conversación con el testador con relación a su voluntad testamentaria a finales del año 1988. El Lcdo. Saldaña, por su parte, señaló que la última reunión que tuvo con el testador para asesorarlo en materia de derecho sucesoral, fue celebrada el 26 de junio de 1989. Finalmente, el Lcdo. Manuel Moreda Toledo señaló, sin precisar un mes en específico, que en el año 1989 el testador le había comunicado su interés de mejorar a su esposa hasta el "máximo permitido por ley".

De manera que, de los documentos sometidos por la partes no se desprende que las manifestaciones fueron coetáneas o posteriores al otorgamiento del testamento el 4 de septiembre de 1989.[5] Siendo ambivalente la voluntad del hombre hasta el momento mismo de su muerte y el testamento es su última voluntad, respecto a la conducta del testador, lo único que puede ayudar a la interpretación del testamento es la conducta posterior al otorgamiento del mismo. Manresa, Comentarios al Código Civil Español, Tomo V, 451, 1951. Podemos deducir que de haber sido el deseo del testador acumular el legado y la cuota viudal, el mismo fue descartado tras el amplio y extenso asesoramiento de derecho sucesoral que recibió.

---

[5] De las declaraciones juradas que obran en el expediente se desprende que la manifestación más reciente que pudo haber hecho el testador en relación con su voluntad testamentaria, fue hecha a la Lcda. Elba Rodríguez Fuentes a "principios de septiembre" de 1989. En vista de que no se especificó cuándo el testador hizo la manifestación, la parte recurrida no nos ha puesto en posición de determinar si la declaración del testador fue posterior a la última enmienda de su testamento.

VI.

Analizada toda la prueba extrínseca presentada, incluso la sometida por la señora Rosselli, forzoso es concluir que de la misma no surge que el testador al dejarle un legado a la viuda "de la totalidad del tercio de libre disposición" o de la "cantidad máxima de libre disposición", tuvo la intención de acumular dicho legado con la cuota viudal, y por consiguiente, gravar la mejora dejada por el testador a sus dos nietos.   En ausencia de prueba extrínseca que demuestre dicha intención, y aplicando la norma jurisprudencial vigente, concluimos que el legado hecho a la viuda del causante se tendrá hecho a cuenta de la legítima del cónyuge viudo.

Por los fundamentos que anteceden, procede revocar la Sentencia dictada por el Tribunal de Circuito de Apelaciones.

Se dictará la Sentencia correspondiente.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Manuel Moreda Toledo

    Demandante-Recurrido

       Vs.

                        CC-1998-951     Certiorari

Maruxa Rosselli

    Demandado

SENTENCIA

San Juan, Puerto Rico, a 3 de marzo de 2000.

        Por los fundamentos expuestos en la Opinión Per Curiam que antecede, la cual se hace formar parte integrante de la presente, se revoca la Sentencia dictada por el Tribunal de Circuito de Apelaciones.

        Así lo pronunció y manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Fuster Berlingeri disiente sin opinión escrita. El Juez Asociado señor Negrón García y la Juez Asociada señora Naveira de Rodón no intervienen.

                      Isabel Llompart Zeno
                      Secretaria Tribunal Supremo