ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL GENERAL DE JUSTICIA
TRIBUNAL DE APELACIONES
**PANEL X**

| | | |
|---|---|---|
| **MICHELL MANUEL FELICIANO RODRÍGUEZ** PETICIONARIA(S) **EX PARTE** **JAMES M. UGOBONO DÍAZ** PARTE(S) INTERVENTORA(S)- RECURRIDA(S) **DIEGO UGOBONO DÍAZ Y VANESSA UGOBONO DÍAZ** PARTE(S) INTERVENTORA(S)- PETICIONARIA(S) | **KLCE202300929** | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de **SAN JUAN** Caso Núm. **SJ2023CV02419 (504)** Sobre: Consignación de Fondo; Renuncia al Cargo Contador Partidor |

Panel integrado por su presidenta, la Juez Lebrón Nieves, la Juez Barresi Ramos y la Jueza Santiago Cordero

Barresi Ramos, juez ponente

### S E N T E N C I A

En San Juan, Puerto Rico, hoy día 28 de septiembre de 2023.

Comparecen ante este Tribunal de Apelaciones, los señores **DIEGO J. UGOBONO DÍAZ Y VANESSA UGOBONO DÍAZ** mediante *Petición de Certiorari* incoada el 21 de agosto de 2023. En su recurso, nos solicitan que revisemos la *Resolución* decretada el 8 de agosto de 2023 por el Tribunal de Primera Instancia, Sala Superior de San Juan (TPI).[1] Mediante dicho dictamen, entre otros asuntos, el foro primario reiteró el señalamiento de una audiencia, a los fines de evaluar a varios candidatos para el nombramiento de un contador-partidor/árbitro testamentario, "[a]nte la disidencia de las partes".[2]

Exponemos el trasfondo fáctico y procesal que acompaña a la presente controversia.

---

[1] Esta determinación judicial fue notificada y archivada en autos el 11 de agosto de 2023. Véase Apéndice de *Petición de Certiorari,* págs. 153- 154.
[2] Véase Apéndice de *Petición de Certiorari,* pág. 153.

Número Identificador:
SEN2023_____

## - I -

El 7 de enero de 2021, el señor Humberto J. Ugobono Alé (señor Ugobono Alé) suscribió una escritura pública sobre *Testamento Abierto* ante el(la) notario Mónica Santiago Lanauze.[3] En lo aquí pertinente, el señor Ugobono Alé designó en dicho *Testamento* a sus tres (3) hijos, **DIEGO J. UGOBONO DÍAZ, VANESSA UGOBONO DÍAZ Y JAMES M. UGOBONO DÍAZ**, como ejecutores particulares (albaceas), con facultad para realizar funciones de albaceas y administradores. Conforme surge, dichas funciones debían realizarse de conformidad a la siguiente disposición testamentaria:

> En caso de que hubiere más de un ejecutor particular designado como albacea y administrador, fungiendo simultáneamente, dichos ejecutores particulares actuarán de común acuerdo y sus actuaciones se harán por consentimiento de todos dichos ejecutores particulares, o por cualquiera de ellos que esté debidamente autorizado por los demás, o, en caso de disidencia, **por lo que acuerde la mayoría**.[4] (Énfasis suplido.)

Por otro lado, en dicho *Testamento*, se designó de manera supletoria al señor Michell M. Feliciano Rodríguez (señor Feliciano Rodríguez) como contador partidor. En específico, expuso lo siguiente:

> **DÉCIMO**: El Testador declara además que, en caso de que sus herederos y la ejecutora particular de su herencia no se pongan de acuerdo en efectuar la partición convencional de su herencia o sobre algún bien hereditario específico y/o en el caso de que todos o algunos de los herederos del Testador no tengan capacidad legal o mental, designa como contador partidor al licenciado Michell Manuel Feliciano Rodríguez, y le suplica que proceda a efectuar la partición dentro del término más breve posible[...].[5]

El 10 de noviembre de 2021, falleció el señor Ugobono Alé dejando bienes muebles e inmuebles en Puerto Rico. Sus únicos y universales herederos son: **DIEGO J. UGOBONO DÍAZ, VANESSA UGOBONO DÍAZ, JAMES M. UGOBONO DÍAZ** y Rosalía M. Díaz Sinko.

Tras la defunción del señor Ugobono Alé, y luego de una petición ex parte sobre Cartas Testamentarias, presentada por los señores **DIEGO,**

---

[3] Véase Apéndice de la *Petición de Certiorari*, págs. 155-208.
[4] *Íd.*, pág. 170.
[5] *Íd.*, págs. 176-177.

**VANESSA** y **JAMES M.**, todos de apellido **UGOBONO DÍAZ**, el 25 de febrero de 2022, el foro primario pronunció *Resolución* decretando lo siguiente:

> El Tribunal declara CON LUGAR la Petición y, por la presente, en cumplimiento del Artículo 597, del Código de Enjuiciamiento Civil de Puerto Rico, 32 L.P.R.A. 2571, y del Testamento de Don Humberto Jorge Ugobono Alé, este Tribunal expide y otorga a favor de los señores Vanessa Ugobono Díaz, Diego Javier Ugobono Díaz y James Malcolm Ugobono Díaz, Cartas Testamentarias de Albaceazgo y Administración de la herencia del causante, para actuar como Albacea en el ejercicio y ejecución del albaceazgo y la administración y partición de la herencia del causante, la cual por disposición expresa del Testamento tendrá las facultades que le confiere la Ley y todas las que legalmente sean necesarias para cumplir su cometido; relevándolos de prestación de fianza por el término y con las facultades que le confiere el Código Civil y demás leyes de Puerto Rico.[6]

Posteriormente, los señores **DIEGO J. UGOBONO DÍAZ, VANESSA UGOBONO DÍAZ** y **JAMES M. UGOBONO DÍAZ** contrataron al señor Feliciano Rodríguez como contador partidor, para asistir en el proceso de partición del caudal hereditario del señor Ugobono Alé.[7] Empero, el 17 de marzo de 2023, el señor Feliciano Rodríguez instó una *Petición de Consignación y Renuncia al Cargo de Contador Partidor*.[8] Ello, según alegó, a consecuencia de una serie de controversias surgidas entre los albaceas de la sucesión, que hacían necesaria su renuncia como contador partidor. Ante esta situación, el señor Feliciano Rodríguez procedió con la entrega del *Informe del Contador Partidor* en el cual incluyó el inventario de los bienes del caudal hereditario. El tribunal de instancia declaró ha lugar la aludida solicitud, mediante *Resolución* dictaminada el 29 de marzo de 2023 y notificada el 31 de marzo de 2023.[9]

Después, el 19 de abril de 2023, el señor **JAMES M. UGOBONO DÍAZ** presentó una *Moción Solicitando Intervención y Nombramiento de Contador Partidor* solicitando se aceptara su intervención y, además, sugiriendo tres (3) abogados como alternativas al nombramiento de contador partidor, a

---

[6] Véase Apéndice de la *Petición de Certiorari*, págs. 5-7.
[7] *Íd.*, pág. 2.
[8] *Íd.*, págs. 1-4.
[9] Sistema Unificado para el Manejo y Administración del Caso (SUMAC), entrada número 5.

saber: los licenciados Antonio L. García Ramírez, José Negrón Fernández, y Luis Raúl Irizarry Cuebas.[10]

A esos efectos, el 24 de abril de 2023, el foro recurrido decretó *Resolución* en la cual expresó que: "el Tribunal, dentro de la potestad conferida, entiende que resulta prudente y conveniente nombrar al Lcdo. José Negrón Fernández, como administrador judicial de los bienes del caudal hereditario".[11]

A los pocos días, el 26 de abril de 2023, los señores **DIEGO J. UGOBONO DÍAZ Y VANESSA UGOBONO DÍAZ** presentaron *Moción Urgente Solicitando Intervención*.[12] Por medio de esta, solicitaron la intervención en el proceso y se dejase sin efecto el nombramiento del licenciado José Negrón Fernández como nuevo contador partidor. Arguyeron que, la solicitud del señor **JAMES M. UGOBONO DÍAZ** era contraria a la voluntad expresa del señor Ugobono Alé, toda vez que surgía claramente del *Testamento* que las actuaciones entre los co-albaceas debían llevarse a cabo por el consentimiento de todos y en caso de disidencia, por la mayoría entre ellos.

El 3 de mayo de 2023, el foro de instancia decretó *Orden* en la cual declaró no ha lugar la solicitud para dejar sin efecto el nombramiento del administrador judicial, sin fundamento alguno; y pautó audiencia argumentativa virtual para el 18 de mayo de 2023 a las 2:15 de la tarde.[13] Ante esta situación, el 9 de mayo de 2023, los señores **DIEGO J. UGOBONO DÍAZ Y VANESSA UGOBONO DÍAZ** presentaron *Moción en Reconsideración*.[14] A grandes rasgos, adujeron que: (i) el Tribunal carecía de jurisdicción para efectuar el nombramiento, ante alegada falta de parte indispensable; (ii) el señor **JAMES M. UGOBONO DÍAZ** no tenía legitimación activa para promover el nombramiento de un nuevo contador partidor; (iii) en ningún momento se

---

[10] Véase Apéndice de la *Petición de Certiorari*, págs. 78- 80.
[11] *Íd.*, págs. 81- 82.
[12] *Íd.*, págs. 83- 85.
[13] *Íd.*, pág. 86.
[14] *Íd.*, págs. 87- 108.

había presentado una solicitud para nombrar a un administrador judicial, sino que la petición presentada por el señor **JAMES M. UGOBONO DÍAZ** versaba sobre el nombramiento de un contador partidor.

El 9 de mayo de 2023, el licenciado Negrón Fernández presentó *Moción en Cumplimiento de Resolución No Aceptando la Designación de Administrador Judicial*.[15] En su escrito informó no tener tiempo para poder cumplir responsablemente con lo que se exige de un administrador judicial.

Más adelante, el 18 de mayo de 2023, el señor **JAMES M. UGOBONO DÍAZ** presentó su *Oposición a Reconsideración y Solicitud de Nombramiento*.[16] En apretada síntesis, expresó que, ante la discrepancia entre los albaceas, era necesaria la figura del contador partidor, y el Tribunal tenía la facultad para nombrar a cualquiera de los profesionales propuestos por él, o cualquier otro que estimara apropiado para el antedicho puesto.

Ese mismo día, se celebró la audiencia pautada.[17] Escuchadas las alegaciones y argumentos de las partes, el tribunal se reservó su fallo a expresarse por escrito, y advirtió que su posición era siempre mantener la voluntad de los testadores.

El 7 de junio de 2023, el foro primario pronunció *Resolución* enunciando que procedía el nombramiento del contador partidor y dispuso en lo pertinente:

> [...] entendemos que le asiste la razón a los Co-Interventores cuando alegan que la selección del nuevo contador-partidor/árbitro testamentario debe llevarse a cabo entre los tres Interventores. Es por ello que el Tribunal concede a los Co-Interventores un término de 20 días contados a partir de la notificación del presente dictamen, para que presenten una moción en la que expresen su conformidad con alguno de los candidatos propuestos por el Interventor James y/o presenten sus propios candidatos, para la determinación del Tribunal y/o informen que han llegado a un acuerdo en cuanto a la persona que, en lo prospectivo, ocupará el cargo de contador-partidor/árbitro testamentario.[18]

---

[15] Véase Apéndice de la *Petición de Certiorari*, págs. 109- 110.

[16] *Íd.*, págs. 111- 125.

[17] El 2 de junio de 2023, se efectuó la notificación de la *Minuta*. Véase Apéndice de la *Petición de Certiorari*, pág. 126.

[18] *Íd.*, págs. 127- 131.

Ante ello, el 26 de junio de 2023, los señores **DIEGO J. UGOBONO DÍAZ Y VANESSA UGOBONO DÍAZ** presentaron *Moción en Conformidad en Torno a la Designación del Cargo de Contador Partidor.*[19] En virtud de esta, informaron que ambos alcanzaron un acuerdo y propusieron la designación del señor José Miguel Barletta Rodríguez, como contador partidor/árbitro. Al día siguiente, el señor **JAMES M. UGOBONO DÍAZ** presentó *Moción en Torno a "Moción de Conformidad [...]" y Solicitando Nombramiento por el Tribunal*[20], sosteniendo que la persona recomendada por los señores **DIEGO J. UGOBONO DÍAZ Y VANESSA UGOBONO DÍAZ** no debía ser considerada, y reiterando sus recomendaciones.

El 27 de junio de 2023, el tribunal *a quo* intimó *Orden* pautando una audiencia virtual para el 22 de agosto de 2023, a los fines de evaluar el nombramiento de un nuevo contador-partidor/árbitro testamentario.[21] Además, impuso a las partes interventoras la obligación de citar sus respectivos candidatos.

El 30 de junio de 2023, los señores **DIEGO J. UGOBONO DÍAZ Y VANESSA UGOBONO DÍAZ** presentaron *Moción de Reconsideración.*[22] Manifestaron que de conformidad con la voluntad del señor Ugobono Alé, la determinación de quién debía ser el contador partidor le correspondía a los albaceas y el Tribunal no tenía facultad para ello. Luego, el 20 de julio de 2023, el señor **JAMES M. UGOBONO DÍAZ** presentó *Moción en Cumplimiento de Orden, Solicitando se Declare No Ha Lugar de Plano Moción de Reconsideración e Imposición de Sanciones Interlocutorias.*[23] En resumen, arguyó que los señores **DIEGO J. UGOBONO DÍAZ Y VANESSA UGOBONO DÍAZ** presentaron la solicitud de reconsideración fuera de término y contra una determinación final y firme del Tribunal.

---

[19] Véase Apéndice de la *Petición de Certiorari*, págs. 132- 135.
[20] *Íd.*, págs. 136- 137.
[21] *Íd.*, pág. 141.
[22] *Íd.*, págs. 142- 148.
[23] *Íd.*, págs. 149- 152.

En consecuencia, el 8 de agosto de 2023, el foro de instancia dictaminó la *Resolución*[24] recurrida. En lo pertinente, el tribunal *a quo* determinó lo siguiente:

> Ante la disidencia de las partes tras el ejercicio que el Tribunal ordenó, para el nombramiento de un contador-partidor/árbitro testamentario, resulta sensato celebrar la breve vista, evaluar los candidatos, evaluar la oposición de los interventores respecto a los candidatos y que sea el Tribunal el que establezca el nuevo punto de partida entre las partes.[25]

Insatisfechos, el 21 de agosto de 2023, los señores **DIEGO J. UGOBONO DÍAZ Y VANESSA UGOBONO DÍAZ** incoaron ante nos una *Petición de Certiorari* y presentaron escrito intitulado *Auxilio de Jurisdicción*. En su recurso, señalan el siguiente error:

> Erró el Tribunal de Primera Instancia al no reconocer la autoridad de dos de los tres albaceas testamentarios y una mayoría de los herederos, para designar al contador partidor, conforme a la voluntad del testador y al ordenamiento jurídico.

El 22 de agosto de 2023, el señor **JAMES M. UGOBONO DÍAZ** compareció mediante *Moción de Desestimación de Certiorari y Auxilio de Jurisdicción*, alegando que el recurso incoado fue presentado tardíamente. En esencia, sostuvo que las partes pretendían la revisión de la *Resolución* dictada el 7 de junio de 2023, notificada el 8 de junio de 2023, la cual ya era final y firme.

El 23 de agosto de 2023, decretamos *Resolución* en la cual, entre otras cosas, declaramos ha lugar la solicitud de auxilio de jurisdicción, y concedimos un plazo perentorio de diez (10) días para mostrar causa por la cual no debemos expedir el auto de *certiorari* y revocar el dictamen impugnado. Adicionalmente, concedimos un término de (10) días a los señores **DIEGO J. UGOBONO DÍAZ Y VANESSA UGOBONO DÍAZ** para que se expresaran con relación a la solicitud de desestimación.

En cumplimiento, el 1 de septiembre de 2023, tanto el señor **JAMES M. UGOBONO DÍAZ** como los señores **DIEGO J. UGOBONO DÍAZ Y VANESSA**

---

[24] *Íd.*, págs. 153-154.
[25] Véase Apéndice de la *Petición de Certiorari,* pág. 153.

**UGOBONO DÍAZ** comparecieron ante nos.

Evaluado concienzudamente el expediente del caso y contando con el beneficio de la comparecencia de ambas partes, exponemos las normas de derecho pertinentes a la controversia planteada a los fines de adjudicar.

– II –

-A-

El recurso de *certiorari* permite a un tribunal de mayor jerarquía revisar discrecionalmente las órdenes o resoluciones interlocutorias emitidas por una corte de inferior instancia judicial.[26] Por ello, la determinación de expedir o denegar este tipo de recurso se encuentra enmarcada dentro de la discreción judicial.[27]

De ordinario, la discreción consiste en "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera".[28] Sin embargo, el ejercicio de la discreción concedida "no implica la potestad de actuar arbitrariamente, en una u otra forma, haciendo abstracción del resto del derecho."[29]

Ahora bien, en los procesos civiles, la expedición de un auto de *certiorari* se encuentra delimitada a las instancias y excepciones contenidas en la Regla 52.1 de las de Procedimiento Civil de 2009.[30] La mencionada Regla dispone que solo se expedirá un recurso de *certiorari* cuando "se recurra de una resolución u orden bajo remedios provisionales de la Regla 56, *injunctions* de la Regla 57 o de la denegatoria de una moción de carácter dispositivo."[31]

---

[26] *Rivera Gómez v. Arcos Dorados Puerto Rico Inc.*, 2023 TSPR 65; 211 DPR ___ (2023); *Torres González v. Zaragoza Meléndez*, 2023 TSPR 46; 211 DPR ___ (2023); *McNeil Healthcare v. Mun. Las Piedras I*, 206 DPR 391, 403 (2021).
[27] *Íd.*
[28] *Medina Nazario v. McNeil Healthcare LLC*, 194 DPR 723, 729 (2016).
[29] *Íd.*
[30] 32 LPRA Ap. V, R. 52.1; *Torres González v. Zaragoza Meléndez*, *supra.*
[31] *Caribbean Orthopedics v. Medshape et al.*, 207 DPR 994, 1004 (2021).

En ese sentido, y a manera de excepción, se podrá expedir este auto discrecional cuando:

(1) se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales;
(2) en asuntos relacionados a privilegios evidenciarios;
(3) en casos de anotaciones de rebeldía;
(4) en casos de relaciones de familia;
(5) en casos revestidos de interés público o
(6) en cualquier situación en la que esperar a una apelación constituiría un fracaso irremediable de la justicia.[32]

Lo anterior constituye tan solo la primera parte de nuestro análisis sobre la procedencia de un recurso de *certiorari* para revisar un dictamen del Tribunal de Primera Instancia. De modo que, aun cuando un asunto esté comprendido entre las materias que las Reglas de Procedimiento Civil de 2009 nos autorizan a revisar, el ejercicio prudente de esta facultad nos requiere tomar en consideración, además, los criterios dispuestos en la Regla 40 del Reglamento del Tribunal de Apelaciones.[33]

-**B**-

El examen de los [recursos] discrecionales no se da en el vacío o en ausencia de otros parámetros.[34] Para ello, la Regla 40 de nuestro Reglamento instituye los indicadores a considerar al evaluar si se debe o no expedir un recurso de *certiorari*. A saber:

(A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho;
(B) Si la situación de hechos planteada es la más indicada para el análisis del problema;
(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia;
(D) Si el asunto planteado exige una consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados;
(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración;
(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio; y

---

[32] 4 LPRA Ap. XXII-B; *IG Builders v. BBVAPR*, 185 DPR 307, 339-340 (2012).
[33] 4 LPRA Ap. XXII-B, R. 40. *McNeil Healthcare v. Mun. Las Piedras I*, *supra*, pág. 404; *800 Ponce de León v. AIG*, 205 DPR 163 (2020).
[34] *McNeil Healthcare v. Mun. Las Piedras I*, supra, pág. 404; *800 Ponce de León v. AIG, supra*.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.[35]

Es preciso aclarar que la anterior no constituye una lista exhaustiva, y ninguno de estos criterios es determinante, por sí solo, para justificar el ejercicio de nuestra jurisdicción.[36] Esto es, los anteriores criterios nos sirven de guía para poder determinar de la forma más sabia y prudente si se justifica nuestra intervención en la etapa del procedimiento en que se encuentra el caso.[37] Ello, pues distinto al recurso de apelación, este Tribunal posee discreción para expedir el auto de *certiorari*.[38] La delimitación que imponen estas disposiciones reglamentarias tiene "como propósito evitar la dilación que causaría la revisión judicial de controversias que pueden esperar a ser planteadas a través del recurso de apelación."[39]

Finalmente, este Tribunal solo intervendrá con las determinaciones interlocutorias discrecionales procesales del tribunal sentenciador cuando este último haya incurrido en un craso abuso de discreción.[40] Esto es, "que el tribunal actuó con prejuicio o parcialidad, o que se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo, y que nuestra intervención en esa etapa evitará un perjuicio sustancial".[41]

– **C** –

El testamento es un negocio jurídico unilateral, mediante el cual una persona natural dispone, total o parcialmente, de sus bienes para luego de su muerte, y ordena su propia sucesión dentro de los límites y formalidades que señala la ley.[42] En reiteradas ocasiones, nuestro Tribunal Supremo de Puerto

---

[35] 4 LPRA Ap. XXII-B, R. 40. *Torres González v. Zaragoza Meléndez, supra*; *Rivera Figueroa v. Joe´s European Shop*, 183 DPR 580 (2011).

[36] *García Morales v. Padró Hernández*, 165 DPR 324, 335 esc. 15 (2005).

[37] *Mun. de Caguas v. JRO Construction*, 201 DPR 703, 712 (2019); *Torres Martínez v. Torres Ghigliotty*, supra.

[38] *Feliberty Padró v. Pizarro Rohena*, 147 DPR 834, 837 (1999).

[39] *Scotiabank v. ZAF Corp. et al.*, supra, págs. 486 - 487; *Mun. de Caguas v. JRO Construction*, supra.

[40] *García Rubiera v. Asociación de Suscripción Conjunta*, 165 DPR 311, 322 (2005).

[41] *Lluch v. España Service Station*, 117 DPR 729, 745 (1986).

[42] 31 LPRA § 11251. Hacemos constar que el testamento otorgado en el caso de marras fue suscrito luego de la aprobación y vigencia del Nuevo Código Civil de 2020 (Ley Núm. 5 de 1 de enero de 2020).

Rico ha establecido que al interpretar un testamento, lo fundamental es hacer valer la voluntad del(de la) testador(a).[43] Dicho de otra manera, "la voluntad del testador es la ley de la sucesión."[44] En virtud de ello, toda disposición testamentaria deberá entenderse en el sentido literal de sus palabras, "a no ser que aparezca claramente que fue otra la voluntad [del testador]. En tal caso, se observará lo que parezca más conforme a la intención que tuvo al otorgarlo."[45]

En consideración con lo anterior, la función de los foros judiciales al llevar a cabo la interpretación testamentaria está inherentemente atada al descubrimiento de la voluntad del testador, de modo que prevalezca la misma.[46] Al realizar dicha función, se debe tomar en consideración que "cuando el lenguaje [utilizado] es claro y la intención del disponente se manifiesta diáfanamente de una lectura literal de las disposiciones del testamento, la labor judicial resulta sencilla."[47] Esto es, cuando el texto del testamento es claro, ahí finaliza la interpretación testamentaria.[48]

– III –

En esencia, los señores **DIEGO J. UGOBONO DÍAZ Y VANESSA UGOBONO DÍAZ** alegan que el Tribunal de Primera Instancia erró al señalar una audiencia para designar un contador partidor, en lugar de reconocer la autoridad de éstos para llevar a cabo tal designación, conforme a la última voluntad del testador, el señor Ugobono Alé, y el ordenamiento jurídico. Luego de examinados los planteamientos, a la luz de los hechos y el derecho aplicable, expedimos el auto solicitado y revocamos la *Resolución* recurrida. Veamos.

---

[43] *Tous Rodríguez v. Tous Oliver*, 2023 TSPR 106; *Moreda v. Rosselli*, 150 DPR 473, 480 (2000).
[44] *Vilanova v. Vilanova*, 184 DPR 824, 858 (2012); *Licari v. Dorna*, 148 DPR 453, 460 (1999); *Vda. De Sambolín v. Registrador*, 94 DPR 320, 327 (1967).
[45] 31 LPRA § 6342.
[46] *Tous Rodríguez v. Tous Oliver*, supra; *Vilanova v. Vilanova*, supra.
[47] *Torres Ginés v. ELA*, 118 DPR 436, 445 (1987), citando a E. González Tejera, *Derecho Sucesorio Puertorriqueño*, San Juan, Ed. Ramallo, 1983 Vol. II, pág. 55.
[48] *Moreda v. Roselli*, supra, pág. 481.

Antes expusimos, que "la voluntad del testador es la ley de la sucesión."[49] Precisamos que la interpretación testamentaria resulta sencilla cuando la intención del disponente surge diáfanamente de una lectura literal de las disposiciones del testamento, y tal interpretación debe finalizar cuando dichas providencias sean claras.[50]

En su testamento, el señor Ugobono Alé designó como ejecutores particulares (albaceas) y administradores, con facultad para realizar dichas funciones, a sus tres (3) hijos, **DIEGO J., VANESSA Y JAMES M.**, todos de apellidos **UGOBONO DÍAZ**. Adicionalmente, y en lo pertinente, el señor Ugobono Alé prescribió que en instancias en las que hubiese más de un ejecutor particular designado como albacea y administrador, como en este caso, dichos ejecutores "actuarán de común acuerdo y sus actuaciones se harán por consentimiento de todos dichos ejecutores particulares, o por cualquiera de ellos que esté debidamente autorizado por los demás, o, **en caso de disidencia, por lo que acuerde la mayoría**."[51](Énfasis nuestro.)

De una lectura literal de dicha designación testamentaria, surge de manifiesto que la voluntad del señor Ugobono Alé es, en principio, que todas las actuaciones concernientes a las funciones de ejecutores particulares y administradores de los señores **DIEGO J. UGOBONO DÍAZ, VANESSA UGOBONO DÍAZ Y JAMES M. UGOBONO DÍAZ**, se lleven a cabo con el consentimiento de los tres (3). Empero, previendo alguna discrepancia entre estos, el señor Ugobono Alé concertó diáfanamente que en caso de disidencia, las actuaciones se realizarán por acuerdo de la mayoría.[52] Es decir que, en instancias en las que los señores **DIEGO J. UGOBONO DÍAZ, VANESSA UGOBONO DÍAZ Y JAMES M. UGOBONO DÍAZ** no logren alcanzar un acuerdo para llevar a cabo alguna de las funciones para las cuales quedaron facultados en virtud del testamento del señor Ugobono Alé, no es necesario el consentimiento de

---

[49] *Vilanova v. Vilanova*, supra; *Licari v. Dorna*, supra; *Vda. De Sambolín v. Registrador*, supra.
[50] *Torres Ginés v. ELA*, supra; *Moreda v. Roselli*, supra.
[51] Apéndice de la *Petición de Certiorari*, pág. 170.
[52] *Íd.*

los tres (3), sino que el acto puede llevarse a cabo cuando dos (2) de ellos consientan al mismo.

Es la apreciación de esta Curia que dicha cláusula testamentaria muestra de manera inequívoca la última voluntad del testador, señor Ugobono Alé, por lo que no está sujeta a ulterior análisis interpretativo. De manera que, cualquier acto en contrario, como lo supone la designación de un contador partidor por el foro primario, como se pretende, quebranta sin más la voluntad del testador. En adición, es menester señalar que el señor Ugobono Alé instituyó en su testamento una prohibición absoluta de toda intervención judicial en su sucesión testamentaria.[53] Insistimos en que lo fundamental al momento de interpretar un testamento es hacer valer la voluntad del testador.[54] Resolvemos, por consiguiente, que incidió el tribunal primario al señalar una audiencia para designar un nuevo contador partidor.

– **IV** –

En mérito de lo anterior y al amparo de los términos de la Regla 40 del Tribunal de Apelaciones, se **expide** el auto de *certiorari* incoado; se revoca la *Resolución* intimada el 8 de agosto de 2023; se deja **sin efecto** la paralización de los procedimientos dispuesto mediante *Resolución* dictaminada el 23 de agosto de 2023; y se devuelve el caso a la consideración del foro primario para la continuación de los procedimientos conforme a lo aquí resuelto.

**Notifíquese inmediatamente**.

Lo acordó el Tribunal y lo certifica la Secretaría del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[53] *Íd.*, pág. 177.
[54] *Tous Rodríguez v. Tous Oliver*, supra; *Moreda v. Rosselli*, supra, pág. 480.